Wilson, P. J.
This suit was upon a policy of life insurance. The defense was based upon a provision in the policy that if the insured should use alcoholic, narcotic or other stimulants so as to impair health, or cause death thereby, then the policy should' be null and void. It *31 was alleged in the answer that the insured “deliberately and on his own motion, and in disregard of its effects upon his life, took a large and overdose of phenacetin, the same being a narcotic, and that the taking of which phenacetin was the sole cause of the death. ’ ’ In the replication the allegation that the insured died from an overdose of phenacetin was denied, and it was averred that death was from some natural cause, unknown to the plaintiff. By the pleadings two issues were presented: 1. Whether phenaeetin was a narcotic. 2: Whether death was caused by an overdose of it. These were questions of fact, and the burden to prove each was upon the defendant company. The finding of the court was adverse to the defendant, and not being manifestly against the weight of the evidence, and it being ample to support the finding, this court is under the well-settled rule bound by it.
The chief contention of defendant, however, upon which it relies for a reversal of the judgment, grows out of the proofs of death. It appears that in what is called the certificate of the attending physician, appended to and made a part of the proof of death, made out upon a printed form furnished by the company, the physician, in answer to the printed question, “State the remote cause of death and all predisposing features,” stated, “Paralysis of the heart, due to an overdose of phenacetin.” It was claimed that the beneficiary, wife of the deceased, adopted and was bound by this answer, because in the statement made out by her, constituting a part of the proof of death, also made out upon a printed form furnished by the-company, in answer to a question as to the cause of death, she replied: “See physician’s statement.” It was shown by the tetimony of the physician himself, who made out the certificate, that he was not in attendance upon the deceased before or at the time of his *32 death; that death was very sudden, and he, the physician, did not see the insured until after he was dead, and that in making out the statement as to the cause of death, he relied upon hearsay, he having been told by a clerk of the deceased that the insured had the evening before his death taken a dose of phenacetin. Even this, however, was denied by the clerk in his testimony. Notwithstanding these facts, defendant urges that the plaintiff was estopped from denying that death was from any other cause than that stated in this certificate of the attending physician, which she had adopted as her answer in her affidavit making proof of death, and that it was reversible error in the court to permit evidence to be received contradicting this certificate. The position of defendant is contrary to the overwhelming weight of authority. Even if the physician in this case had been the attending physician of the insured, it has been held by very high authority that the beneficiary should not be held responsible for any misstatement contained therein not caused by her. — Cushman v. Life Ins. Co., 70 N. Y. 79. In that case it was said by the court, speaking of the beneficiary: “He was responsible for the statement made by himself, but not for the statements which he was required to procure from the attending physician, the officiating clergyman and the undertaker. Such statements were procured at the request of the defendant for its information, and it must take them for what they may be worth. The plaintiff had no means of compelling answers in such statements to suit himself.” None of the elements of an estoppel are shown here. The defendant did not rely upon this statement, and so relying, change its situation in any manner so as to contract or incur any liability. Before it was made, that had occurred — namely, the death of the insured — which gave rise to its liability, if any existed. The disproof of the statement made in the *33 certificate of the attending physician did not create, increase or change the liability of defendant. The utmost extent to which the authorities go is that a beneficiary in a suit upon a policy of life insurance should not be allowed to dispute a statement in the proof of loss, as to the cause of death, for the first time at the trial — that a defendant must have some notice of the intention to deny it. In this instance, the defendant had ample notice, this being specifically given in the replication filed by plaintiff several months before the case came to trial. See Bliss on Life Insurance, § 265; McMaster v. Ins. Co., 55 N. Y. 229; Fisher v. Life Association, 188 Pa. St. 13; Hanna v. Ins. Co., 150 N. Y. 530; Ins. Co. v. Dick, 44 L. R. A. 846. To the report of the last cited case, which was by the supreme court of Michigan, is appended an able and instructive note, in which the whole question here presented is fully reviewed, and a large number of authorities cited.
In support of its contention, defendant relies chiefly upon two authorities: Campbell v. Charter Oak Ins. Co., 10 Allen (Mass.) 213; Irving v. Excelsior Ins. Co., 1 Bosw. (N. Y.) 507. As we read them they do not support its position, but on the contrary are as far as they go in accord with the general weight of authority. They do not hold that an incorrect statement in proofs of loss cannot be disputed or corrected. The extent to which they go is that the correction or denial could not be first made known to the insurers at the trial of the action to recover for the loss, and for the obvious reason that the correction or denial at such a time would be a surprise. In referring to these cases, the United States supreme court said: “Neither of the cases can be considered as deciding that the insured is estopped by an erroneous statement of a fact in the proofs of loss furnished by him, even though the true statement of that *34 fact be a condition of the policy.” — Life Ins. Co. v. Schwenk, 94 U. S. 597. It cannot be said that any duty devolved upon the plaintiff to have procured and furnished a new statement correcting the mistake before she should have been permitted to furnish her proofs, because there was no attending physician, and this was, of course, impossible. The cause of death, as alleged in her replication, was unknown.
We think there was no error in the rulings or findings of the court, and the judgment will be affirmed. ■ Affirmed.