DANFORD R. CUSHMAN, Administrator, etc., Respondent, *v.* THE UNITED STATES LIFE INSURANCE COMPANY, Appellant.

A temporary ailment cannot be considered a disease, within the meaning of a warranty against disease in a policy of life insurance, unless it be such as to indicate a vice in the constitution, or so serious as to have some bearing upon general health and the continuance of life, or such as, according to common understanding, would be called a disease.

Accordingly *held*, where the warranty was that the insured had not had " disease of the liver," that proof that he had had slight and temporary attacks of congestion of the liver, from which he had recovered, did not establish a breach of warranty as matter of law, but that the question whether the congestion was of such a character as to constitute a disease was one of fact for the jury.

To constitute a medical attendance, it is not necessary that a physician should attend a patient at his house ; attendance at the office of the physician is sufficient.

In answer to a question in an application made in 1872, calling for the name of his " usual medical attendant." the insured answered, " Dr. P." The insured was a single man, who had always lived in his father's family. Dr. P. had been for many years the family physician ; had frequently attended members of the family, and had been frequently consulted by the insured, but had never been called to attend him at his house. One Dr. G. attended him in a sickness in 1867 for about two weeks, and Dr. O. attended him during two slight attacks of illness in 1870 and 1871. *Held*, that the answer was correct ; or at least it was a question for the jury.

Dr. O. attended upon the insured during his last illness. In accordance with the requirement of defendant, a statement of Dr. O. was attached to the proofs of loss, in which, in answer to the question, " How long have you been the attendant or family physician ? " he snswered, " Five years." *Held*, that this answer did not necessarily show that the answer in the application was absolutely untrue ; also, that plaintiff was not responsible for any mis-statements of Dr. O. not caused by himself.

Upon the trial, Dr. O., as a witness for defendant, testified that the insured died of congestion of the liver. Dr. P., as a witness for plaintiff, was permitted to testify, under a general objection and exception, that, from the history of the case given him at the time by Dr. O., the insured died from inflammation of the bowels. *Held,* no error; that, by laying the proper foundation, the evidence sought by the question would have been proper; and, as the objection was only a general one, the objection that no foundation was laid was not available here.

Dr. P. was permitted to testify, under objection and exception, that the insured stated to him at the time of the application that he (Dr. P.) was his physician. *Held,* that, as the statement was, in substance, but what was stated in the application, the evidence was harmless, and so its reception was not a ground for reversal.

(Argued May 25, 1877; decided June 5, 1877.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order denying a motion for a new trial, and directing judgment on a verdict.

This action was brought upon a policy of life insurance issued by defendant November 2, 1871, upon the life of Birt Cushman, plaintiff's intestate. The defence was a breach of warranty. The case upon a former appeal is reported in 63 N. Y., 404. The evidence as far as material is stated in the opinion.

At the close of the evidence defendant's counsel moved for a nonsuit on the ground that the evidence showed a breach of warranty in answers by the insured, to the following questions in the application: " Has the party had * * disease of the liver ? " Answer, "No." " Or any serious disease ?" Answer, " No." " Give name and residence of party's usual medical attendant ? " Answer, " Charles Purdy, M. D., Norwich." The motion was denied and said counsel duly excepted.

Exceptions were ordered to be heard at first instance at General Term.

*Flamen B. Candler,* for the appellant. A compliance with the clause of the policy as to furnishing proofs of loss was a

condition precedent to the plaintiff's right of recovery. (Flanders on Fire Ins. [2d ed.], 363, 572, 578, 585; Bliss on L. Ins. [2d ed.], § 257; *Worsley* v. *Wood*, 6 T. R., 710; *Mason* v. *Harvey*, 8 Exch., 819; *Savage* v. *How. Ins. Co..*, 52 N. Y., 502; *Underwood* v. *F. J. S. Ins Co.*, 57 id., 500; *Owen* v. *F. J. S. Ins. Co.*, 57 Barb., 518; *Blossom* v. *Lyc. F. Ins. Co.*, 5 Ins. L. J., 302; *Taylor* v. *Ætna L. Ins. Co.*, 13 Gray, 434; *Irving* v. *Excelsior F. Ins. Co.*, 1 Bosw., 513; *Campbell* v. *C. O. F. & M. Ins. Co.*, 10 Al., 213; *Smith* v. *Haverhill Mut. F. Ins. Co.*, 1 id., 297; *Nia. D. Ins. Co.* v. *Lewis*, 12 U. C. C. Pl's., 123; *E. R. R.* v. *Relief F. Ins. Co.*, 98 Mass., 420.) Neither plaintiff nor his agents have complied with the clause as to furnishing proofs of loss. (*Foot* v. *Ætna L. Ins. Co.*, 61 N. Y., 571; *Fitch* v. *Am. Pop. L. Ins. Co.*, 59 id., 557; 63 id., 404; *Vose* v. *Eagle L. & H. Ins. Co.*, 6 Cush., 42; *Vatton* v. *Nat. Fund L. Ins. Co.*, 20 N. Y., 32; *Miles* v. *Conn. Mut. L. Ins. Co.*, 3 Gray, 580; *Monk* v. *Un. Mut. L. Ins. Co.*, 6 Robt., 455; *Kelsey* v. *Univr. M. L. Ins. Co.*, 35 Conn., 225; Bliss on L. Ins. [2d ed.], §§ 36, 125; *Ætna L. Ins. Co.* v. *France*, 1 Otto., 510; *Forbes* v. *E. L. As. Co.*, 10 Ct. of Sessions Cas. [Scotch], 451; May on L. Ins., § 304; *Everett* v. *Desborough*, 5 Bing., 503; *Sceales* v. *Scanlon*, 6 Irish L. R., 367.) A mistake in proofs of loss, affecting a matter calculated to afford a good defence to an insurance company and in consideration of which it has refused to pay the amount insured, would estop the plaintiff from introducing evidence to contradict it. (*McMaster* v. *Ins. Co. of N. Am.*, 55 N. Y., 222; *Irving* v. *Excel. F. Ins. Co.*, 1 Bosw., 513; *Campbell* v. *C. O. F. & M. Ins. Co.*, 10 Al., 213; *Mut. B. L. Ins. Co.* v. *Newton*, 22 Wal., 32; Flanders on F. Ins. [2d ed.], 573; *Parmelee* v. *Hoff. F. Ins. Co.*, 54 N. Y., 193.)

*Edward B. Thomas*, for the respondent. The attacks of congestion of the liver the insured had had could not be considered a disease of the liver within the meaning of the warranty contained in the policy. (*Ross* v. *Bradshaw*, 2

Park on Ins., 933; *Willis* v. *Poole*, id., 935; *Chattock* v. *Shaw*, 1 M. & R., 498; *Fowkes, etc.*, v. *M. & L. L. Ins. Co.*, 3 F. & F., 440; *Barteau* v. *Phœ. Mut. L. Ins. Co.*, 3 T. & C., 578; *Peacock* v. *N. Y. L. Ins. Co.*, 20 N. Y., 293; *Fitch* v. *Am. Pop. L. Ins. Co.*, 59 id., 557; *Higbie* v. *Guardn. Mut. L. Ins. Co.*, 53 id., 605; *Price* v. *Phœ. Mut. L. Ins. Co.*, 17 Minn., 518; *Ins. Co.* v. *Wilkenson*, 13 Wal., 230; *L. Ins. Co.* v. *Francisco*, 17 id., 672; *Watson* v. *Van Warren*, 4 Taunt., 763.) The evidence of Dr. Purdy as to the cause of the death of the insured was proper. (*McDonald* v. *North*, 47 Barb., 530; *Gaffney* v. *People*, 50 N. Y., 424; *Height* v. *People*, id., 392; *Schermerhorn* v. *Gregg*, 55 id., 670; *Platt* v. *Platt*, 58 id., 646; *Bebell* v. *L. I. R. R. Co.*, 44 id., 370; *Staats* v. *H. R. R. Co.*, 23 How., 464; *Mallory* v. *Perkins*, 9 Bosw., 576; *Crippen* v. *Morse*, 49 N. Y., 67.)

EARL, J. When this case was here upon a prior appeal, it was decided that the application for the insurance was part of the policy, and that the answers to the questions therein contained were therefore warranties, and that, unless they were substantially true, there can be no recovery in this action. (63 N. Y., 404.) The plaintiff again recovered upon the last trial, and his judgment is now assailed upon various grounds, which I will consider separately.

It is claimed that there was a breach of warranty in answering "No" to the question in the application, whether the applicant "had ever had disease of the liver?" Dr. Ormsby, a young physician, who was admitted to practice in 1868, attended the insured in July, 1870, for four, five or six days, and he testified that he, in his judgment, had congestion of the liver. It does not appear that his symptoms were very marked. He was not much sick, was dressed every day, and up and around more or less, and soon recovered. He again attended him in July, 1871, for a similar sickness, still less serious, visited him two or three times, and treated him for congestion of the liver. In 1872, after the policy was issued, he treated him again, for five days, for the same com-

plaint, and in 1873, he again attended him for a few days in his last illness, and testified that he then had and died of acute congestion of the liver. The evidence tended to show that the assured was not much sick at any of the times when Dr. Ormsby visited him prior to his last sickness; that he was not confined to his bed; that he was up and around; that he speedily recovered; and that, during all the years prior to his last sickness, he was capable of vigorous labor and great endurance, and was apparently a sound, healthy man. In November, 1871, Dr. Purdy, defendants' examining physician, who had known the assured for many years, examined him upon his application for insurance, and found his liver sound and free from disease. He was called to attend him, in consultation with Dr. Ormsby, in his last sickness, shortly before his death, and testified that, from the symptoms detailed to him by Dr. Ormsby, he did not die of congestion of the liver, but of inflammation of the bowels, thus contradicting Dr. Ormsby as to the cause of death. Taking into consideration all the evidence, it cannot be said that it was so conclusively shown that the assured had had congestion of the liver prior to the date of the policy as to leave nothing for the determination of the jury. Taking into consideration the symptoms of the sickness, the degree of skill and the extent of the examination of the doctor, the very slight nature of the sickness and the speedy and complete recovery, and all the other circumstances, it was for the jury to determine whether, prior to the insurance, the assured had had congestion of the liver. But, even if he had had such congestion, it does not follow that, within the meaning of the policy, he had had a disease of the liver. In construing contracts words must have the sense in which the parties used them, and to understand them as the parties understood them, the nature of the contract, the objects to be attained, and all the circumstances must be considered. By the questions inserted in the application, the defendant was seeking for information bearing upon the risk which it was to take, the probable duration of the life to be insured.

It was not seeking for information as to merely temporary disorders or functional disturbances, having no bearing upon general health or continuance. of life. Colds are generally accompanied with more or less congestion of the lungs, and yet in such a case there is no disease of the lungs which an applicant for insurance would be bound to state. So most, if not all persons, will have at times congestion of the liver, causing slight functional derangement and temporary illness, and yet in the contemplation of parties entering into contracts of life insurance, and having regard to general health and the continuance of life, it may safely be said that in such cases there is no disease of the liver. In construing a policy of life insurance it must be generally true that, before any temporary ailment can be called a disease, it must be such as to indicate a vice in the constitution, or be so serious as to have some bearing upon general health and the continuance of life, or such as according to common understanding would be called a disease; and such has been the opinion of text writers and judges. (2 Park. on Ins., 933, 935; *Chattock* v. *Shawe*, 1 Moody & R., 498; *Fowkes* v. *The M. & L. Life Ins. Co.*, 3 Foster and Fin,, 440; *Barteau* v. *The Phenix Mut. Life Ins. Co.*, 3 T. & C. [N. Y. Sup. Ct. R.], 578; *Peacock* v. *N. Y. Life Ins. Co.*, 20 N. Y., 293; *Higbie* v. *Guardian Mut. L. Ins. Co.*, 53 N. Y., 603; *Fitch* v. *Am.. Pop. L. Ins. Co.*, 59 N. Y., 557, 571.) Hence whether the assured had had congestion of the liver, and whether such congestion was of such a character as to constitute a disease of the liver, within the meaning of the policy, were both questions properly submitted to the jury, and their determination thereon is conclusive.

The assured also answered "No" to the question in the application whether he "had had any serious disease." It can hardly be claimed that there was any evidence showing this answer to have been untrue. But whether it was true or not, for reasons above stated, it was at least a question of fact upon all the evidence for the jury.

. To the question as to the "name and residence of the party's usual medical attendant," the assured answered, "Dr.

Charles Purdy," and it is claimed that this answer was untrue. In 1867, Dr. Greenleaf attended the assured, when he was sick with some trouble of the bowels, from the 14th to the 30th day of August, and he never attended him before or after that time. Dr. Ormsby attended him prior to the date of the policy only in July, 1870 and July, 1871, as above stated. The assured was a single man who had always prior to his insurance lived in his father's family, and Dr. Purdy had, for many years, been the family physician. He had frequently attended different members of the family, but had never been called to the house to attend the assured, except in his last sickness; but during many years the assured had called upon him every year, and sometimes several times a year, and consulted him as physician. It is quite evident that he knew more about the health and constitution of the assured than any other doctor. To constitute a medical attendance, it is not requisite that a physician should attend the patient at his home ; an attendance at his own office is sufficient. Of these three physicians, then, who was the " usual medical attendant ?" It certainly was not Dr. Greenleaf who had attended him during but one brief illness, and never before or after. Was it Dr. Ormsby who had attended him on two occasions, visiting him in all probably not over half a dozen times ? Or was it Dr. Purdy, the family physician in his father's family, upon whom he called yearly for many years for medical advice or treatment ? I think Dr. Purdy could more properly be called the usual medical attendant; but whether this be so or not, it was at least a question for the jury, and there was no error in submitting it to them.

But the policy contained a clause in which the defendant promised to pay the amount insured " in three months after due notice and satisfactory proof of the death during the continuance of this policy of the   *   *   assured   *   *   and proof of the just claim of the assured." After the death of the assured, the plaintiff delivered to the defendant claim and proof of loss, signed and verified by

himself. Annexed thereto was the statement of Dr. Ormsby, as physician in attendance upon the assured in his last illness, as to the cause of his death, and in that statement in answer to the question, "How long have you been the attendant or family physician"? he answered, "Five years." It is contended that this answer shows that Dr. Purdy was not "the usual medical attendant" of the assured prior to the date of the policy, and hence that there was a breach of warranty rendering the policy void, and that therefore there was no "proof of just claim," as required by the policy. To this contention there are several satisfactory answers. The answer made in August, 1873, that Dr. Ormsby had been the "attending physician" of the assured for five years, does not necessarily show that the answer made at the time of the insurance in November, 1871, that Dr. Purdy had, prior to that time, been the "usual medical attendant," was absolutely untrue. A party may have several "attending physicians," and one "usual medical attendant." But a still better answer is, that the plaintiff was not wholly responsible for the statements made by Dr. Ormsby. He had made his statement, showing a "just claim" against the defendant for the amount insured, and in that statement there was nothing in conflict with any warranty contained in the policy. This statement, we may infer from the form of blank furnished by the company, the plaintiff was required to procure from the physician who attended the assured in his last illness. The main object of this statement was to furnish the company evidence of the death and the cause and circumstances thereof. · There can be no reason for holding the plaintiff responsible for any misstatement contained therein not caused by him. He was responsible for the statement made by himself, but not for the statements which he was required to procure from the attending physician, the officiating clergyman, and the undertaker. Such statements were procured at the request of the defendant for its information, and it must take them for what they may be worth. The plaintiff had no means of com-

pelling answers in such statements to suit himself. If the answers were not satisfactory, or were in conflict with any answers contained in the application for the insurance, the defendant could have instituted further inquiries or asked for further explanations from the plaintiff. This it did not do. So far as appears it made no objection to the proof of loss, and did not in the answer, or at any prior time, allege the discrepancy now noticed as a reason for refusing to pay the amount insured. It cannot claim to have been misled by the statement of Dr. Ormsby into a defence of the action, even if that were material, as this defence was not alluded to in the answer, and other special defences were, and were also litigated upon the trial, and there was no evidence that it was so misled. There was, therefore, nothing to prevent the plaintiff from proving upon the trial the truth as to who was the usual medical attendant of the assured. (*Life Ins. Co.* v. *Francisco,* 17 Wall., 672.)

Upon the trial plaintiff's counsel offered to prove by Dr. Purdy, that from the symptoms, as reported to him at the time by Dr. Ormsby, the assured died from inflammation of the bowels. This was objected to by defendant's counsel as improper, and the objection was overruled, and the witness answered that from the history of the case given him by Dr. Ormsby, the assured did die of inflammation of the bowels. Dr. Purdy could, as an expert, have given his opinion of the cause of death, based upon a statement of facts received from another, or assumed to exist. The counsel for plaintiff could have asked him what Dr. Ormsby stated to him as to the symptoms, and then, judging from such symptoms, what the disease was; or could have assumed the symptoms in his question as stated by Dr. Ormsby in his evidence, and then asked the witness what disease they indicated. Thus, by laying the proper foundation, the evidence sought by the question objected to would have been competent. (*Bedell* v. *Long Island R. R. Co.,* 44 N. Y., 367; *Reynolds* v. *Robinson,* 64 id., 589.) But the objection was a mere general one; it did not specify that no proper foundation had been

laid for the evidence, and hence is not available here as ground of error. (*Levin* v. *Russell,* 42 N. Y., 251; *Williams* v. *Sargeant,* 46 N. Y., 481.)

Dr. Purdy was permitted against defendant's objection to testify that at the time he made the medical examination of the assured upon his application for insurance, the assured stated to him that he, Dr. Purdy, was his physician. While this statement may not have been properly received as evidence, it is impossible to see what harm it could do. It was substantially what he stated in writing in his application for insurance, and he must have stated it orally before it was written in the application. The doctor was required to read the application and to state in his medical report that he believed all the questions therein contained to have been correctly answered. No harm could therefore come of the evidence.

I have thus carefully considered all the allegations of error to which the learned counsel for the appellant called our attention, and it is some satisfaction to be able to reach a conclusion that will, upon this second appeal to this court, terminate this long litigation.

The judgment must be affirmed.

All concur, except Rapallo, J., absent.

Judgment affirmed.