Merrimack, ⎱
Jan. 6, 1903. ⎰

## PACKARD v. METROPOLITAN LIFE INSURANCE CO.

The words "sound health," as used in a life insurance policy, mean the absence of constitutional vice and of disease of a serious nature that have a tendency to shorten life, in contradistinction to temporary illness or indisposition.

Whether a person is of sound health, within the meaning of that term as used in a life insurance policy, is a question of fact.

Evidence that a person was affected with a disease of the heart prior to insurance upon his life, and that his death resulted therefrom, warrants a finding that he was not of sound health at the time the policy was issued.

ASSUMPSIT, upon a policy of life insurance, dated September 17, 1900. Trial at the April term, 1902, of the superior court before *Peaslee*, J., who found a verdict for the defendants, subject to the plaintiff's exception.

The insured was the ten-year-old son of the plaintiff. The application for the insurance was made by the plaintiff on September 5, and the boy was examined by the defendants' physician the next day and was reported by him to be in good health. Thereafter, and before the policy was delivered, the boy fell sick of a disease of the heart, from which he died March 8, 1901. September 16, the plaintiff took him to a physician, who found that he had a disease of the heart; but he did not inform the plaintiff of his discovery, and she had no knowledge that the boy had such disease. The disease was undiscoverable except upon examination by a physician, is not infrequent with children, and is frequently outgrown. At the date of the policy and the time of its delivery, there was nothing in the actions and appearance of the boy to indicate to ordinary observation that he had anything more than a temporary ailment. The boy's father died of consumption

and that fact was waived by the defendants in the policy. The attending physician testified that the boy died of heart disease and consumption, and that the consumption might have been an inheritance from the father and the cause of the heart disease.

The policy contained the following: "*Provided*, however, that no obligation is assumed by the company prior to the date hereof, nor unless on said date the insured is alive and in sound health." The application contained a like provision. The policy also contained the following: "This policy is issued upon an application which omits the warranty usually contained in applications, and contains the entire agreement between the company and the insured and the holder and the owner hereof."

*Martin & Howe*, for the plaintiff.

*Brown, Jones & Warren*, for the defendants.

CHASE, J. The parties introduced into their contract a provision "that no obligation is assumed by the company prior to the date hereof, nor unless on said date the insured is alive and in sound health." That they had authority to limit the contract in this way cannot be doubted. *Dwight* v. *Insurance Co.*, 103 N. Y. 341. The question to be considered arises upon this provision— not upon a representation or warranty made by the plaintiff in the application for insurance. There was no warranty in the application, and it does not appear that any representation was made therein concerning the health of the assured. The entire contract is contained in the policy. The question then is: What did the parties intend by this provision?

It must be presumed that they intended what the words used by them ordinarily signify in common speech. This leaves little room for interpretation, since there is but slight ambiguity in the terms of the provision. No obligation was assumed by the defendants unless the insured was alive and in sound health on the day of the date of the policy. The defendants' promise was not absolute, but conditional. The existence of life and sound health in the insured was a condition precedent to the promise of insurance. But what was meant by the words "sound health?" Evidently, not perfect health. "We are all born with the seeds of mortality in us." No definition can be given to these words that will apply in all cases. A mere temporary indisposition or ailment would not ordinarily be regarded as rendering the health unsound, within the meaning of these words when used in an insurance contract. Speaking generally, they mean the absence of any vice in the constitution and of any disease of a serious nature that have a direct

tendency to shorten life; the absence of a condition of health that is commonly regarded as disease, in contradistinction to a temporary ailment or indisposition.   *Cushman* v. *Insurance Co.*, 70 N. Y. 72, 77; *Brown* v. *Insurance Co.*, 65 Mich. 306; *Metropolitan Ins. Co.* v. *Howle*, 62 Ohio St. 204.

Whether, in a given case, a person is of sound health, must of course depend upon the circumstances of the case.   "It must obviously be very difficult to determine questions like these by any general rule.   And it is the usual practice to leave these questions to the jury."   2 Par. Cont. (8th ed.) 467; *Billings* v. *Insurance Co.*, 70 Vt. 477; *Dorey* v. *Insurance Co.*, 172 Mass. 234; *Cushman* v. *Insurance Co.*, 70 N. Y. 72, 77; *Grattan* v. *Insurance Co.*, 92 N. Y. 274.   The question of sound health resembles in this respect the question whether a ship has been "in collision" (*London Assurance* v. *Companhia*, 167 U. S. 149), or whether a person was of "temperate habits" (*Insurance Co.* v. *Foley*, 105 U. S. 350), or whether premises were "vacant by the removal of the owner or occupant."   *Stone* v. *Insurance Co.*, 69 N. H. 438.

It must be inferred from the fact that a general verdict was rendered in favor of the defendants, that it was found as a fact that the insured was not in sound health at the date of the policy. The facts specifically reported warrant this finding.   After the boy was examined by the defendants' physician, and before the date of the policy, he "fell sick of a disease of the heart," from which he died within six months.   Although the disease was one that was not infrequent among children and is frequently outgrown, it could not reasonably be regarded as a temporary ailment, or as not of a serious nature.   A person having such a disease would not be regarded as in sound health.   The fact that the plaintiff was not aware of the nature of the disease, and that its nature was undiscoverable except by a physician, did not prevent it from rendering the boy's health unsound.   Undoubtedly, the testimony of the mother and others that the boy appeared to be in good health would be competent evidence on the issue of soundness, but it would not be conclusive.   The testimony of physicians concerning the condition of his health, discovered by their examinations of him, would also be competent.   In *Dorey* v. *Insurance Co.*, *supra*, several persons testified that the insured appeared to be in good health, and was working as usual at the date of the policy; but the testimony of physicians tended to prove that he had a disease of a serious nature, which was not apparent to common observation, and the question of the soundness of his health was submitted to the jury.   See, also, *Billings* v. *Insurance Co.*, *supra*.

Presumably, the attending physician's testimony that the boy died of heart disease and consumption, and that the consumption might have been inherited from the father and caused the heart disease, was considered and weighed by the court in connection with all other testimony in the case, and in view of the defendants' waiver of the fact that the boy's father died of consumption. If the boy was sick with consumption at the date of the policy, no one would say that he was in sound health. As the record is understood, the .waiver related to the liability of the boy's having consumption in the future as an inheritance from his father, and not to the existence of the disease at the date of the policy. The defendants waived the possible defect in the boy's constitution arising from the existence of the disease in his father, but not the present, active existence of the disease in the boy himself. It is highly improbable that they would insure the life of a person actually sick with consumption; but they might take the risk of insuring a son whose father died of consumption, and in whom the disease had not appeared.

*Exception overruled.*

All concurred.