AMERICAN NAT. INS. CO. v. McKELLAR.
(No. 1520.)

Court of Civil Appeals ,of Texas.   Beaumont.
April 21, 1927.

Rehearing Denied May 4, 1927.

**1. Insurance** ⬡➼136(4)—**Insured, if suffering from syphilis on delivery of life policy, resulting in paresis within six weeks after delivery, held not then in "sound health."**

Under life policy requiring insured to be in sound health when policy was delivered, if insured in fact had syphilis at time policy was delivered to him, which produced paresis within six weeks after delivery of policy, causing death, he was not in "sound health," since he would then be suffering from disease seriously affecting his system and shortening his life (citing Words and Phrases, "Sound Health").

**2. Insurance** ⬡➼646(3)—**To defeat recovery, on life policy requiring insured to be in sound health on delivery thereof, insurer must prove death resulted from pre-existing cause.**

In action on life policy requiring insured to be in sound health on delivery of policy, defense that insured died from paresis caused by old case of syphilis required defendant to prove that insured's death might have resulted from syphilis and to exclude by evidence, sufficient as matter of law, probability that death resulted from some disease contracted after delivery of policy.

**3. Insurance** ⬡➼665(3)—**Insurer held not to have sustained burden of showing that insured died from cause antedating delivery of life policy.**

In action on life policy requiring insured to be in sound health on delivery of policy, insurer *held* not to have sustained burden of proving defense that death resulted from syphilis existing on delivery of policy, under evidence showing that insured may have died from paranoia or paresis caused by syphilis contracted after delivery of policy.

**4. Exceptions, bill of** ⬡➼8—**Bill of exceptions, showing only that objection was made to testimony without showing purpose or grounds for exclusion, held defective.**

Bill of exceptions to exclusion of testimony, reciting that appellee objected to appellant's questions, *held* defective, as failing to show purpose of testimony or grounds of objection or exclusion of testimony.

**5. Appeal and error** ⬡➼662(3)—**Bill of exceptions, complaining of certain testimony which court qualified by stating objection was sustained, showed no error.**

Bill of exceptions, complaining of plaintiff's testimony reciting that court overruled defendant's objection to which defendant excepted, showed no error, where court qualified assignment by stating that objection made was sustained.

**6. Appeal and error** ⬡➼662(3)—**Qualification to bill of exception is binding on appellant.**

Appellant is bound by court's qualification to his bill of exception.

**7. Appeal and error** ⬡➼662(3)—**Bill of exceptions to exclusion of testimony qualified by court to show that testimony excluded had been previously introduced and not withdrawn showed no error.**

Bill of exceptions complaining of exclusion of testimony whether beneficiary in policy sued on heard conversation between physician and insured, qualified by court to show that witness denied hearing conversation, which denial was not withdrawn, though same testimony was subsequently excluded because insured was of unsound mind, showed no error.

On Rehearing.

**8. Evidence** ⬡➼570—**Weight of expert testimony is for jury.**

Except in most exceptional cases, weight of expert testimony is for jury.

Appeal from District Court, Nacogdoches County; C. A. Hodges, Judge.

Action by Mrs. Florence McKellar against the American National Insurance Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Seale & Denman, of Nacogdoches, for appellant.

S. M. Adams and R. A. McAlister; both of Nacogdoches, for appellee.

WALKER, J.   In the trial court appellee recovered a judgment against appellant upon a policy of life insurance issued and delivered by it to her husband, James I. McKellar, during his lifetime, in the sum of $550.  In addition to the face of the policy with interest, she also recovered damages at 12 per cent. and $200 attorneys' fees, making a total recovery of $826. The policy in question was issued and delivered about the 20th of April, 1925, without medical examination, and, among other warranties, upon the fol-

---

lowing, specially pleaded by appellant as its defense:

"That no obligation is assumed by the company prior to the date hereof nor unless on said date the insured is alive and *in sound health.*"

The following is appellant's first proposition:

"The trial court erred in refusing to give to the jury a peremptory instruction in favor of this appellant * * * because the undisputed evidence showed that the insured was not in sound health when the policy in controversy was issued to him or when same was delivered to him."

[1] The policy was issued and delivered to James I. McKellar about the 20th of April, 1925, and he died about the 3d of February, 1926. The testimony of all the medical experts—five eminent doctors—was to the effect that in their judgment his death was caused by paresis. This was shown to be a horrible disease caused solely and alone by syphilis. These able doctors testified that there was no definite time in which syphilis produced paresis, estimating the time at from 3 to 50 years, depending upon the mental and physical characteristics of the patient. Appellant's evidence raised the issue that insured became infected with syphilis from 10 to 20 years before the policy was issued. Appellant contends that the evidence shows, without controversy, and as a matter of law, that McKellar was inflicted with syphilis of long standing at the time the policy was issued, which produced paresis within six weeks after the delivery of the policy. If appellant has correctly construed the facts, then an instructed verdict should have been given in its favor. The express warranty of the policy was that no obligation attached under the conditions, unless the insured was "in sound health" when the policy was delivered. The words "sound health," as used in a life insurance policy, have been judicially construed. We take the following definition from 7 Words and Phrases, First Series, page 6554:

"The words 'sound health,' as used in the provision in a life in 'a life insurance policy, do not mean perfect health. We are all born with the seeds of mortality in us. No definition can be given to these words that will apply in all cases, but the term means generally the absence of any vice in the constitution and of any disease of a serious nature that has a direct tendency to shorten life, in contradistinction to a temporary ailment or indisposition. Packard v. Metropolitan Life Ins. Co., 72 N. H. 1, 54 A. 287, 288."

In Brown v. Metropolitan Life Insurance Co., 65 Mich. 306, 32 N. W. 610, 8 Am. St. Rep. 894, the term "sound health" was said to mean:

"A state of health free from any disease or ailment that affects the general soundness and healthfulness of the system seriously, not a mere temporary indisposition which does not tend to weaken or undermine the constitution of the assured."

Under these and other judicial definitions from Words and Phrases under "sound health," if the insured, in fact, had syphilis at the time this policy was delivered to him, which produced paresis within six weeks after the delivery of the policy, he was not in sound health, for under that showing he was suffering with a disease that seriously affected the general soundness and healthfulness of his system, and not only had a direct tendency to, but in fact did, shorten his life.

But we do not agree with the proposition that the conclusion of fact contended for followed, as a matter of law, from all the evidence in the record. While all the doctors swore that the death of McKellar, in their judgment, was caused by paresis, none of them subjected him to the Wasserman test, which was the only (quoting from the evidence of Dr. Barham) "positive way to know that he had syphilis," but formed their conclusions from certain objective symptoms, such as "his pupils did not react alike, a slight disturbance in speech * * * and loss of knee jerks." Dr. Greenwood, shown by all the evidence to be an outstanding authority, testified that McKellar showed these objective symptoms when he examined him on June 6th, and he further testified:

"If he had been looked over carefully by competent physicians about the 17th of April, 1925, I think paresis would have been detected."

Dr. Nelson, a most eminent physician and surgeon, testified that he treated McKellar for hydrophobia in February, 1925, and, further:

"I later made an examination of him about the 17th or 18th of May, 1925. My recollection is that Mr. McKellar came to me and explained that he was not feeling like he ought to be and was afraid that the hydrophobia was the cause of it, and I went over him pretty thoroughly. During that examination of him, if he had had any objective symptoms of paresis I would have observed it, unless it had been very mild. The only positive test for syphilis is the Wasserman test. * * * When I saw Mr. McKellar the condition of his health was apparently very good, except some stomach derangement. I will go a little further; his teeth were bad and I advised him that that was the cause of his stomach trouble. * * * It would appear to those coming in contact with him that he was a well man and not affected with anything."

Again, Dr. Greenwood testified:

"It would be hard to distinguish between a paranoiac and paresis, unless you should observe the patient a good while. A paranoiac might not have syphilis."

He did not follow this evidence by saying that he had McKellar under observation a sufficient length of time to make the test sug-

gested by his evidence. If appellant was a paranoiac, it would not follow as a matter of law that he was "not in sound health" when the policy was issued, for this disease may have come upon him after the delivery of the policy. It was shown without controversy that for as long as 10 years before January 6, 1925, McKellar was in fine health, except as affected by the mad dog bite in 1925 (and all the doctors testified that his death was not caused by the mad dog bite), never complained, never took medicine, never sick, never called in a doctor, "could do the work of three men." His wife had lived and cohabited with him for 3 or 4 years without contracting the disease. While this evidence was of but little probative force, as the doctors swore there was but little danger of infection from an old case of syphilis, yet it was a circumstance. They also swore that syphilis was progressive in its developments, usually producing certain physical and mental effects upon the patient, none of which were shown in this case. For instance, Dr. Greenwood testified:

"In the early stage we usually have a sense of well being, markedly exaggerated, wonderful confidence, and very greatly exaggerated ideas of what he owns and what he can do. A little later there appears an intense excitement, in which he may be very noisy and destructive."

While Dr. Greenwood and Dr. Shaw both testified that McKellar told them that he had had syphilis, for which he has never treated, Dr. Greenwood said:

"Mr. McKellar, in giving the history of his case to me, stated that he had had syphilis, but his mental condition was such that it would be hard to put much confidence in his reliability at that time. * * * He told me he had had syphilis about 15 or 20 years before, I think this is correct, but it might have been a delusion of his."

And, as already quoted from Dr. Barham:

"If Dr. Greenwood and Dr. Shaw observed Mr. McKellar and did not put the Wasserman test to him, there could have been no positive way to know that he had syphilis."

We believe the evidence quoted is sufficient to raise an issue of fact against appellant's proposition that the insured died from paresis caused by an old case of syphilis.

[2, 3] In order to sustain its proposition, appellant rested under the burden, not only of showing that McKellar's death might have resulted from an old case of syphilis, which burden it met, but also of excluding by evidence, sufficient as a matter of law, the probability that it resulted from some disease contracted after the delivery of the policy, which burden it did not meet. Under the testimony of these fair and impartial doctors, "it would be hard to distinguish between paranoia and paresis." It was shown that none of them made any effort to draw the dis-

tinction. Also the issue was raised that, had he been suffering from paresis, objective symptoms would have been manifest when the policy was delivered; and it was shown by the highest medical authority that such symptoms were not manifest as late as two weeks before his health failed. Appellant has not excluded the probability that McKellar's death was caused by paranoia.

[4] Appellant complains of the ruling of the court in refusing to permit Mrs. McKellar to answer certain questions while she was testifying as a witness in her behalf. The bill of exception to the exclusion of this testimony does not comply with the requirements of the rules. To quote from the opinion of Judge Hawkins, speaking for the Supreme Court in Progressive Lumber Co. v. Railway Co., 106 Tex. 17, 155 S. W. 178, on a bill of exception defective as is this one:

"It does not show for what purpose said testimony was offered, nor the grounds of the objection made to it, nor the grounds upon which the trial court excluded it."

All this bill shows is:

"The plaintiff objected to said question and expected answer and refused to permit defendant to pursue said inquiry and refused to permit the witness Mrs. McKellar to answer said question."

The authorities on this proposition are collated in Skeeters v. Hodges (Tex. Civ. App.) 270 S. W. 913.

[5, 6] Again, appellant complains of certain testimony of the witness Mrs. McKellar. Appellant's bill of exception recites:

"The defendant objected to said testimony of said witness, etc., but the court overruled said objection of defendant to said testimony and permitted said witness to testify as above stated, to which action of the court in permitting said witness to so testify the defendant in open court excepted."

The assignment complaining of this evidence shows no error, since the court in its qualification said:

"Examined and found correct by the court, and ordered filed as a part of the record in this cause, on this the —— day of October, 1926, but qualified the objection made was sustained."

Of course, appellant is bound by the court's qualification, and, if its objection was sustained by the court, it now has nothing of which to complain.

[7] Again, appellant complains of the court's refusal to permit Mrs. McKellar to testify that on July 25, 1925, in the presence of Dr. Shaw, she heard her husband, James I. McKellar, state to Dr. Shaw that he contracted syphilis some 10 or 15 years prior to the 25th of July, 1925, and had never been treated for same. On exclusion of this evidence the bill of exception recites:

"To which action of the court in refusing to permit said witness to answer said question the

defendant then and there in open court excepted."

The court's qualification to this bill of exception is:

"Examined and found correct by the court and ordered filed as a part of the record in this cause on this the 20th day of October, 1926, with the explanation that, when this question was first asked, the witness answered, 'No'; that she heard Mr. McKellar make no statement; before objection was made and sustained, but the answer made was not withdrawn, and later same question asked and objection sustained, because Mr. McKellar was of unsound mind and inmate of the asylum and no one should be bound by such statement, if made."

It thus appears affirmatively from the court's qualification that the witness denied hearing any such statement, and, further, that McKellar was of unsound mind at the time the statement was made.

Affirmed.

### On Rehearing.

The testimony, "It would be hard to distinguish between a paranoiac and paresis," credited in our original opinion to Dr. Greenwood, was given by Dr. Shaw. Dr. Shaw had Mr. McKellar under his personal observation and personal treatment for some time before his death.

We took from appellee's brief, as correctly quoting Dr. Barham, the statement:

"If Dr. Greenwood and Dr. Shaw observed Mr. McKellar and did not put the Wasserman test to him, there could have been no positive way to know that he had syphilis."

Appellant did not challenge this statement of appellee, and we assumed that the quotation was taken correctly from the statement of facts. It is now made to appear that in the original statement of facts on file with us the word "no" reads "a," but appellant admits that the copy on file in the trial court contains the word "no" written in lead pencil over the word "a"; and, doubtless, appellee took her quotation from that record. However, this correction cannot affect our disposition of the case, nor the analysis we have made of the facts, since Dr. Nelson's testimony takes the place of Dr. Barham's. He said: "The only positive test for syphilis is the Wasserman."

Appellant brings forward in its motion the following authorities, saying we are in conflict with all of them: Federal Life Insurance Co. v. Wright (Tex. Civ. App.) 230 S. W. 795; Wright v. Federal Life Insurance Co. (Tex. Com. App.) 248 S. W. 325; Mutual Life Insurance Co. v. Willey, 133 Md. 665, 106 A. 163; Murphy v. Metropolitan Life Ins. Co., 106 Minn. 112, 118 N. W. 355; Security Mutual Life Ins. Co. v. Calvert, 39 Tex. Civ. App. 382, 87 S. W. 889; American National Ins. Co. v. Anderson (Tex. Civ. App.) 179 S. W. 66; Logan v. New York Life Ins. Co., 107 Wash. 253, 181 P. 906; Gallant v. Metropolitan Life Ins. Co., 167 Mass. 79, 44 N. E. 1073; Barker v. Metropolitan Life Ins. Co., 188 Mass. 542, 74 N. E. 945; Gallop v. Royal Neighbors of America, 167 Mo. App. 85, 150 S. W. 1118; Michigan Life Ins. Co. v. Thompson, 44 Ind. App. 180, 86 N. E. 503; Metropolitan Life Ins. Co. v. Willis, 37 Ind. App. 48, 76 N. E. 560; Packard v. Metropolitan Life Ins. Co., 72 N. H. 1, 54 A. 287; American Nat. Insurance Co. v. Crystal (Tex. Civ. App.) 272 S. W. 262; Judd v. Lubbock Mutual Association (Tex. Civ. App.) 269 S. W. 284; National Insurance Co. v. Carter (Tex. Com. App.) 257 S. W. 531; Fidelity Mut. Life Ass'n v. Harris, 94 Tex. 25, 57 S. W. 635, 86 Am. St. Rep. 813; Southern Surety Co. v. Benton (Tex. Com. App.) 280 S. W. 551. We are reasonably familiar with all these cases, and American Nat. Insurance Co. v. Crystal, one of appellant's citations, is by this court. In defining the term "sound health" as used in appellant's policy, none of these authorities go further in its favor than the definition quoted and adopted by us. We agree unconditionally with appellant that it is not liable on this policy, if McKellar "had syphilis at the time this policy was delivered to him." The authorities cited, and with which it now says we are in conflict, could not and do not say more than what we have said. We differ from appellant only in its legal proposition that the evidence in this case showed as a matter of law that McKellar had syphilis. We did not quote the evidence further than to show that an issue of fact was raised against its proposition. On this rehearing, appellant says:

"Can there be any doubt from Dr. Barham's evidence that McKellar did not have syphilis prior to the development of paresis * * *? Now where is there any evidence to predicate a doubt upon but that McKellar had syphilis?"

[8] On this issue all appellant's testimony was by experts, who in many details of their testimony differed from each other. Except in most exceptional cases, the weight of expert testimony is for the jury. It is said by 6 Enc. U. S. Supreme Court Reports, citing The Conqueror, 166 U. S. 110, 17 S. Ct. 510, 41 L. Ed. 937; Congress & E. Spring Co. v. Edgar, 99 U. S. 645, 25 L. Ed. 487:

"The ultimate weight to be given to the testimony of experts is a question to be determined by the jury, and there is no rule of law which requires them to surrender their judgment nor to give a controlling influence to the testimony of scientific witnesses."

The facts in McKellar's life, as detailed in our original opinion, with the conflicts in the testimony of the experts, bring this case peculiarly within the rule announced by the Supreme Court of the United States, which is also the rule in this state. See subject Expert Evidence, Michie's Ency. Dig. Text

Reports. It was said in Fidelity, etc., Co. v. Joiner (Tex. Civ. App.) 178 S. W. 806, quoting the syllabus:

"The weight of expert testimony is for the jury, and their finding based on conflicting medical testimony will not be disturbed."

The other points raised by appellant in its motion for rehearing have been fully considered in our original opinion.

The motion for rehearing is overruled.