## NATIONAL LIFE & ACCIDENT CO. v. MUCKELROY et al.

### No. 7611.

Court of Civil Appeals of Texas. Austin.

June 3, 1931.

King, Battaile & Dutton, of Houston, for plaintiff in error.

King, Wood & Morrow and H. E. Cox, all of Houston, for defendants in error.

### BAUGH, J.

Suit was filed by plaintiff in error, after the death of the insured, to cancel a $2000 insurance policy issued by it on the life of R. T. Muckelroy on February 25, 1927, on the grounds that misstatements made by him in his application constituted a fraud upon it; and that he was not in good health at the time said policy was delivered to him, as required by its terms to make the policy binding on the company. The defendants in error, beneficiaries under said policy, filed a cross-action for the amount of said policy, penalties, and attorney's fees. The case was tried to a jury upon special issues, and judgment on their findings rendered in favor of the beneficiaries.

Only two assignments are here presented: (1) That the insurance company was entitled, under the evidence, to an instructed verdict in its favor; and (2) that the jury finding that the insured was in good health at the time the policy was delivered is contrary to the overwhelming preponderance of the evidence.

The issue of fraud and misstatement of facts in deceased's application for insurance dated January 30, 1927, is predicated upon the following: Applicant stated in response to inquiry: "Have you ever consulted a physician for any ailment or disease not included in above" (specific inquiries in application) that he had an attack of malaria in 1900 of 30 days duration, but had been cured. The insurance company showed that the deceased had been examined by Dr. Buie at Marlin in August, 1921, who stated that he had no independent recollection of Muckelroy, but testified only from his records, which showed that an X-ray then disclosed apparent gall stones, and that his liver was enlarged and hard below the coastal border; that he made no diagnosis of Muckelroy's case at the time, but that from his record he would diagnose said case as obstructive jaundice. The treatment recommended was diet, mineral baths, and some form of electric treatment. There was also evidence to show that prior to that time Muckelroy had taken too large a dose of calomel, was jaundiced, and in a run down condition. That his wife had undergone an operation and was in poor health, and that both of them had gone to Marlin to take the

mineral baths there; that both were examined by physicians at the time as preliminary and incidental to taking the baths. The evidence is clear that after taking the baths, which appear to have been the only treatment received at Marlin in 1921, Muckelroy was restored to normal health and remained so up to within a short time prior to his death. In addition, the medical director of the insurance company at its home office, after receiving said application wrote to Dr. Jones, the local medical examiner of said applicant, inquiring further about any history of a gall bladder disease at any time, and was advised by Dr. Jones prior to the issuance of said policy that about seven years prior thereto Muckelroy had become jaundiced, had several boils and considerable bile in his urine, and had been treated during said attack by Dr. Buie of Marlin, Tex., but had entirely recovered.

■ Doubtless the applicant did not consider his trip to Marlin along with his wife to take the mineral baths there as treatment by a physician, and omitted to so state in his application. In any event, the duly authorized agent of said company to pass upon such matters, its chief medical director, was informed in writing prior to the issuance of said policy of the facts concerning the matter, and issued the policy with these facts in their possession. The insurance company is therefore in no position to now complain, nor can it be said that it was misled or induced by fraud to issue said policy.

The policy was delivered to the insured on February 25, 1927. The first attack of illness thereafter shown was on July 2, 1927. On August 24th, the deceased underwent an operation at Houston which disclosed a cancerous condition of the liver and gall bladder causing his death on October 15, 1927. Dr. Gordon, who as an intern, made a record of Muckelroy's personal history when he entered the hospital at Houston, testified from that record that Muckelroy had told him that he had had an acute attack of pain in the gall bladder region six years before. That since that attack he had had almost constant dull pain in that region, and a jaundiced condition at intervals. That the attack from which he was then suffering came on about a month before resulting in swelling of his abdomen, feet, and legs, and a jaundiced condition.

Based upon a hypothetical question embodying as facts the conditions described by Dr. Buie as existent in 1921, assuming a dull pain in that region almost constantly since 1921, and that at intervals between he was jaundiced and had his flow of bile stopped; that he had cancer of the liver and gall bladder in August, 1927, Dr. Gordon testified that in his opinion the deceased was not in good health on February 25, 1927, but was then suffering from a diseased condition which predisposed cancer. The assistant chief medical

examiner of the insurance company at Nashville, Tenn., gave his opinion to the same effect, based upon hypothetical questions. Dr. Jones testified that he had examined Mr. Muckelroy at Hempstead upon his application and then found nothing wrong with him and thought he was in good health; but that after his death, and in the light of his subsequent attack and operation, he had changed his opinion, and did not now consider that he was in good health when the policy was delivered.

On the other hand, there was the testimony of Dr. Jones that when he examined the deceased in February, 1927, he/found nothing wrong with him. Muckelroy's wife testified that she had been with him every day for eight years before his death. That she had never heard him complain of any pains in his abdomen until in July, 1927; that he had not prior to that time lost a day's work in five or six years; and that he was in good health in February. His employer during the last five years prior to his death testified that he was associated with him daily in his store; that he had never missed a day at work prior to July; that he had never heard him complain of any pain; and that he appeared to be in good health in January and February, 1927. To the same effect was the testimony of his son who saw him every day at home. S. E. McDaniel who had seen him every day since 1924, testified that he had prior to July, 1927, never heard deceased complain of any pains in his abdomen, and that he appeared to be in good health. The witness Blumberg, who worked in the same store with deceased about five years and came in contact with him repeatedly every day, testified that he had never heard deceased complain, prior to July, 1927, when he became ill, of any pains in his abdomen or of ill health, and that he had never seen nor heard of anything in deceased that would indicate ill health.

■ The testimony of these lay witnesses, the examination of Dr. Jones which found nothing wrong with the insured at the time, combined with the uncontradicted testimony that his illness began suddenly in July, 1927, and brought him rather hurriedly to his death in October following, was sufficient evidence we think to support the jury finding that deceased was in good health when his policy was delivered to him. The evidence was also sufficient to show that the dreadful malady, whose fatal ravages medical science seems yet unable to stem, did not take its hold upon him until shortly before it compelled him to cease his work in July.

■ While the opinions of experts may be strongly persuasive, they are not conclusive. It is but common knowledge that in the field of medicine as in other sciences, complete revolutions have taken place in a generation in the diagnoses, causes, effects, and duration of varying human diseases. New discoveries

are constantly being made, and old theories, opinions, and methods of treatment of diseases cast aside. In the instant case, the jury had before them the opinions of experts, all of whom based their opinions, in part at least, upon related facts as to Muckelroy's condition, and some of which were rendered uncertain by the testimony. They also had before them the testimony of Dr. Jones that in February he found nothing wrong with Muckelroy's health at that time after an examination of him; and the testimony of the witnesses who saw him daily that they neither saw anything in deceased's conduct, nor heard anything from him, to indicate that there was anything wrong with his health. It was the prerogative of the jury to pass upon the issue raised, and the foregoing we think constituted sufficient evidence to sustain their findings.

Nothing would be added to our jurisprudence by a discussion or review of the decisions upon the questions here raised. As to the sufficiency of the above evidence on such issues in similar cases, we cite without discussion the following: Vann v. Nat. Life & Accident Ins. Co. (Tex. Com. App.) 24 S.W.(2d) 347; Nat. Life & Accident Ins. Co. v. Doman (Tex. Civ. App.) 31 S.W.(2d) 865; Am. Nat. Ins. Co. v. George (Tex. Civ. App.) 22 S.W.(2d) 704; Am. Nat. Ins. Co. v. Bailey (Tex. Civ. App.) 3 S.W.(2d) 539.

And on the proposition that opinion testimony of physicians is but advisory in nature and may be disregarded by the jury if they see fit, we cite the following authorities: Kennedy v. Upshaw, 66 Tex. 454, 1 S. W. 308; Minero v. Ross, 106 Tex. 535, 172 S. W. 711; Am. Nat. Ins. Co. v. McKellar (Tex. Civ. App.) 295 S. W. 628; 22 C. J. 728, and numerous cases there cited.

We overrule both assignments of plaintiff in error, and affirm the judgment of the trial court.

Affirmed.