ST. LOUIS & S. W. RY. CO. OF TEXAS v. BRASS.

(Court of Civil Appeals of Texas. Dec. 24, 1910. Rehearing Denied Jan. 21, 1911.)

1. CARRIERS (§ 76*)—LOSS OF GOODS—PERSON ENTITLED TO SUE.

The consignor of goods as the party to the contract of shipment may sue the carrier for their destruction in transit, though he has sold them, and indorsed and delivered the bill of lading.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 265; Dec. Dig. § 76.*]

2. CARRIERS (§ 159*)—BILL OF LADING—STIPULATION AS TO PRESENTING CLAIM.

Stipulation in a bill of lading that no action for destruction of the goods can be sustained unless notice of the claim be given the carrier "before the expiration of" 90 days from accrual of the claim contravenes Rev. St. 1895, art. 3379, which, while authorizing a requirement of notice as a condition to action, provided the stipulation be reasonable, provides that "any such stipulation fixing the time within which such notice shall be given at a less period than 90 days" shall be void.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 159.*]

3. CARRIERS (§ 131*)—ACTION FOR LOSS OF GOODS—PRESENTING CLAIM—PLEADING.

The answer in an action against a carrier for destruction of goods in transit, pleading violation of a stipulation against main-tenance of such an action unless notice of the claim be given within a certain time, should allege that plaintiff consignor knew of the destruction at the time thereof; the goods having been in the carrier's possession.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 573; Dec. Dig. § 131.*]

4. CARRIERS (§ 138*)—LOSS OF GOODS—LIABILITY—COTTON AT COMPRESS.

Delivery to a compress by a railroad company under the regulations of the Railroad Commission, requiring a railroad, when requested by the shipper of cotton, to deliver it to the nearest compress on the line of its route for compressing, being at a point between that of shipment and that stipulated by the bill of lading for delivery to the consignee, does not change its liability for the cotton while at the compress from that of common carrier, as it existed at common law, which Rev. St. 1895, art. 320, prevents its limiting to that of warehouseman; but, under article 323, providing that the railroad company shall be liable as common carrier from the commencement of the trip till the goods are delivered to the consignee, at the point of destination, the compress is its agent; and it can relieve itself of liability for the burning of the cotton at the compress, under a stipulation against liability for fire, only by pleading and proving that its negligence, or that of its servants, did not contribute to such loss.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 138.*]

5. CARRIERS (§ 125*)—LOSS OF GOODS—LIABILITY—INSURANCE BY SHIPPER.

A fire policy obtained by a shipper on goods shipped, reciting the release by assured of the carrier from liability under its bill of lading, and the waiver by the insurer of any right of subrogation against the carrier, constitutes no defense to a claim of the shipper against the carrier for the burning of the goods, there being no such privity between it and the parties to the contract of insurance, with reference thereto, as to authorize it to receive any benefit from it as against insured.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 552–556; Dec. Dig. § 125.*]

6. CARRIERS (§ 151*)—LIMITING LIABILITY.

Even if the carrier could be considered a party to the contract of insurance, consisting of a fire policy taken out by a shipper on goods shipped, reciting the release by assured of the carrier from liability under its bill of lading, and the waiver by the insurer of any right of subrogation against the carrier, it would be an indirect way of limiting its liability as a common carrier as existing at common law, and so would be ineffective as against the shipper's claim against it for the burning of the goods through its negligence.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 151.*]

7. CARRIERS (§ 118*)—FREIGHT—COTTON—DELIVERY—POSSESSION BY COMPRESS.

Railroad Commission Regulations, § 7, provides that, when cotton is tendered to a railroad on a compress platform on the track of the railroad, it shall be the duty of the railroad to take charge of and receipt for the cotton in the same manner and on the same terms as it would receive, and receipt for the cotton if tendered at any other place assigned by it for such transaction, provided, however, that the shipper or the compress company shall in such cases assume the additional risk of insurance involved by such act of the railroad. For cotton so tendered the railroad issued a bill of lading, providing that each carrier over whose route cotton was to be carried thereunder should have the privilege of, at its own cost, compressing the same in accordance with the rules and

regulations of the railroad commission. *Held*, that through the compress company, as its agent, the railroad had possession of the cotton, so that its liability therefor as common carrier attached.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 118.*]

**8. CARRIERS (§ 118*)—LOSS OF GOODS—LIABILITY—COTTON AT COMPRESS.**

A carrier required ·by the Railroad Commission regulations, when requested by the shipper of cotton, to deliver the cotton to the nearest compress on the line of its route for compression, but not required to deliver it to any other compress, having, at the request of the shipper, noted on the bill of lading that it was to be compressed at another compress, and there delivered it, is none the less liable for it as a common carrier while in the possession of the compress, though the shipper was interested in such compress, as such delivery must still be deemed a part of the railroad's duty as a common carrier; it having by its bill of lading reserved the right to have the compressing done at its cost.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 118.*]

Appeal from District Court, Hill County; W. C. Wear, Judge.

Action by Franz Brass against the St. Louis & Southwestern Railway Company of Texas. Judgment for plaintiff. Defendant appeals. Affirmed.

Perkins, Gilbert & Upthegrove, Scott, Sanford & Ross, Wm. Thompson, and Geo. S. Wright, for appellant. Morrow & Smithdeal, for appellee.

RAINEY, C. J. Appellee brought this suit to recover of appellant the sum of $10,500 as damages for the destruction by fire of a large quantity of cotton at the compress at Athens, Tex. The petition alleged that the cotton was delivered to the appellant at Hubbard City, Dawson, and Mt. Calm, Tex., in different lots and quantities, for which bills of lading were issued; that said cotton by virtue of said bills of lading was to be delivered to the appellee at Port Arthur, Tex.; that the defendant failed to deliver 151 bales of such cotton at Port Arthur, and negligently permitted the said 151 bales to be destroyed by fire while in its possession as common carrier. The defendant railway company answered by general demurrer and general denial, and further alleged, among other things: That said Franz Brass was not the owner of and had no interest in the cause of action referred to in the petition filed. That said cotton was not in the possession of the defendant railway company as a common carrier at the time of its destruction by fire, but was in the possession of the plaintiff, or his agent, the Athens Compress Company. That the plaintiff had released defendant of any liability by reason of fire. That the bill of lading sued upon provided that no suit should be maintained unless plaintiff gave notice within 90 days after the destruction of the cotton, of

its destruction, to the ·defendant. That the plaintiff had failed to give such notice, notwithstanding the fact that said stipulation was a reasonable one, and that the agents of defendant were located at plaintiff's residence and at other towns convenient to said plaintiff; and notwithstanding the fact that said plaintiff knew the said agents knew that the cotton was destroyed, and could have conveniently given said notice. The case was tried before the court and a jury, and at the conclusion of the testimony the court instructed the jury to return a verdict in favor of plaintiff for the value of the cotton delivered to the defendant by plaintiff, and not redelivered to the plaintiff, with interest from January 9, 1908, at the rate of 6 per cent. per annum. The jury returned a verdict in favor of the plaintiff in the sum of $7,495.79. Judgment was accordingly rendered, and the railway company appeals.

The evidence shows that the cotton, as alleged, was delivered to the railway company at the points stated, and bills of lading therefor were issued to Franz Brass to be delivered to him at Port ·Arthur, Tex. The cotton was transported ·to Athens, Tex., and there turned over to the Athens Compress Company to be compressed, and while there said cotton was destroyed by fire.

The court sustained plaintiff's exception to the second paragraph of defendant's answer, and to this action the appellant complains. The said second paragraph alleges, in substance, that Franz Brass was not the owner of said cotton, nor of any interest therein at the institution of this suit; that previous to the said fire Brass had contracted to sell said cotton to parties ,in Europe (naming them) for a stipulated price; that he had indorsed the bills of lading in blank, drew a draft upon the party or parties or their agents for the full amount of the contract price, attached said draft to said bills of lading, and through a bank or through the ordinary course of business had said draft presented to parties to whom he had sold said cotton; that said drafts were in due course of business presented to the proper parties and promptly paid and the money paid to the said Brass; that said bills of lading were assigned, delivered, and sold to such parties long before the filing of his petition. Wherefore defendant says plaintiff should not be allowed to recover. Plaintiff's exception to said answer is as follows: "For further special exception to said answer, this plaintiff says that that part of same contained in subdivision No. 2 is insufficient in law, in that it is not alleged that the bills of lading were not executed and delivered to the said Franz Brass, and it is not alleged that he was not the assignee of said cotton, and it is not alleged that there was not a written contract with him on the part of the defendant company agreeing to transport said cotton for the

said Franz Brass, and because it is not alleged or shown that the said Franz Brass was not the owner of the cotton at the time the bills of lading or written contract for the shipment thereof were executed and delivered to him, and because it is shown in subdivision 2 of said answer that bills of lading for the cotton in controversy were delivered to the said Franz Brass, and that the contract of shipment was made with him." The proposition submitted by appellant in this connection is: "Where cotton, shipped under a bill of lading, is destroyed by fire while in transit, the consignor who has sold the cotton prior to its destruction, and sold, indorsed, and delivered the bill of lading to a third party, cannot maintain an action against the carrier on the bill of lading for damages by reason of the carrier's failure to deliver the cotton, because he has no interest in the cause of action." The right of a consignor of goods shipped to maintain an action for their loss has been settled in the affirmative by our Supreme Court in the case of Railway Co. v. Smith, 84 Tex. 348, 19 S. W. 509. In the opinion delivered by Mr. Justice Gaines it is said: "The English doctrine seems to be that as a general rule the owner of the goods, whether consignor or consignee, must bring the action for a breach of the contract to carry and deliver the goods in safe condition; but there are American cases which hold that, when the contract is made directly with the consignor, he, as the party to the contract, has the right to sue in his own name for the breach without reference to his property in the goods. Blanchard v. Page, 8 Gray (Mass.) 281; Hooper v. Railway, 27 Wis. 81, 9 Am. Rep. 439; Express Co. v. Craft, 49 Miss. 480, 19 Am. Rep. 4. The Supreme Court of Wisconsin say: 'The shipper is the party in interest to the contract, and it does not lie with the carrier who made the contract with him to say, upon a breach of it, that he is not entitled to recover the damages unless it be shown that the consignee objects, for without that it will be presumed that the action was commenced and is prosecuted with the knowledge and consent of the consignee and for his benefit.' Hooper v. Railway, supra. The rule commends itself to us as being logically deducible from correct principles, and as being both just and convenient in practice. Hutch. on Carr. § 736." This case was afterwards followed in the case of Railway Co. v. Morris, 100 Tex. 611, 102 S. W. 396, 123 Am. St. Rep. 834. In view of said decisions, we conclude that said Franz Brass had the right to maintain this action, and no error was committed in sustaining the exception to the second paragraph of the answer.

The defendant pleaded the violation of a stipulation in the bills of lading reading as follows: "That no suit or action against St. Louis Southwestern Railway Company of Texas on any claim for damages arising from any breach of this contract or injury to or loss or destruction of said cotton shall be sustained in any court unless notice in writing distinctly setting forth the claim shall be given to the nearest or any other convenient local agent of said St. Louis Southwestern Railway Company of Texas before the expiration of ninety days from the date of accrual of such claim." Exceptions to this clause were sustained, and of this appellant complains. Our statute (Rev. St. 1895, art. 3379) authorizes contracts requiring notice to be given of any claim for damages as a precedent to sue, provided the stipulation is reasonable, but it provides that "any such stipulation fixing the time within which such notice shall be given at a less period than ninety days shall be void." The stipulation here pleaded requires notice to be given "before the expiration of ninety days from the date of accrual of such claim." To comply with this stipulation less time than 90 days is required for notice of the destruction of the cotton, and does not give full 90 days for its performance. Burgess v. Telegraph Co., 92 Tex. 125, 46 S. W. 795, 71 Am. St. Rep. 833. In the case of Telegraph Co. v. Van Way, 54 S. W. 415, this court held that a stipulation requiring notice within 90 days was valid; but we think that decision is erroneous in that it is contrary to the statute, as, within 90 days, is less than 90 days. Besides, the cotton was not in the possession of Brass, but was in the possession of the appellant, and the answer does not allege that Brass knew of the loss at the time of its destruction. We therefore hold there was no error in the court's ruling on this proposition.

Exceptions were sustained to paragraph No. 7 of defendant's answer, which form the basis for the fifth assignment of error. Said answer pleaded a stipulation in the bill of lading exempting defendant from liability in case of destruction of said cotton by fire, and also from loss not occurring on its own line; that said cotton was not in its possession when burned, but was in the possession of appellee and his agent; that it had parted with possession of same as a common carrier by delivering it in conformity with said bill of lading to the plaintiff and his agent at Athens, in whose possession it was when destroyed. Said answer also denied the issuance of bills of lading and the burning of said cotton. The plaintiff's exceptions thereto were as follows: "For further special exception to said answer, plaintiff says that part of same contained in subdivision 7 is insufficient in law, in that the stipulation contained in said bills of lading attempting to limit the common-law liability of said railway company as a common carrier is in violation of the statutes of this state; that they are without consideration; that no consideration therefor is alleged, and that they are against public policy; and that that part of said subdivision 7 alleging that the defend-

ant company had delivered said cotton to the plaintiff at Athens, Tex., is insufficient, and shows no defense because in other parts ·of said answer it appears that the bills of lading issued for said cotton obligated and bound the defendant company to deliver· the same to the plaintiff at Athens, Tex., and does not show when the said contract was modified or changed or any consideration for such change or modification." The only proposition submitted under this assignment is: "Where cotton is not in the possession of the railway company as a common carrier, the provision of the bill of lading exempting the railroad company from liability for loss by fire and for loss not occurring on its own line is valid and enforceable, and the court erred in sustaining the exception to that part of defendant's answer alleging such provision." Article 320, Rev. St. 1895, provides that "railroad companies and other common carriers of goods, wares and merchandise, for hire, within this state, on land or in boats or vessels on the waters entirely within the body of this state, shall not limit or restrict their liability as it exists at common law, by any general or special notice, or by inserting exceptions in the bill of lading or memorandum given upon the receipt of the goods for transportation, or in any other manner whatever, and no special agreement made in contravention of the foregoing provisions of this article shall be valid." Article 323, Rev. St. 1895, provides: "Railroad companies, and other common carriers having depots and warehouses for storing ·goods, shall be liable as warehousemen are at common law for goods and the care of the same, stored in such depots or warehouses before the commencement of the trip or voyage on which said goods are to be transported; but shall be liable as common carriers from the commencement of the trip or voyage until the goods are delivered to the consignee at the point of destination." The regulations of the Railroad Commission of this state require railroads, when requested by the shipper of cotton, to deliver to the nearest compress on the line of its route for compressing such cotton.

The question then arises, does the delivery of such cotton, under said regulations, relieve said railroad company from its liability as a common carrier, or is its liability in such a case that of warehousemen? We are of the opinion that such a delivery by the railroad does not change its liability as common carrier to· that of a warehouseman, but, having received the cotton and issued its bill of lading to deliver at a point beyond the compress, the voyage is commenced, and its liability is that of common carrier. The compress must be considered its agent for compressing, and to relieve itself from loss by fire under the stipulation in the contract it is necessary for it to plead and prove that its negligence, or that of its servants did not contribute to the loss by the fire. Defendant's plea did not do this, unless it is held

that the delivery to the compress for compressing was sufficient, and this we do not think sufficient. The exception was properly sustained. Railway Co. v. Richmond, 61 S. W. 411; Railway Co. v. Manufacturing Co., 79 Tex. 27, 14 S. W. 785.

Special exceptions were sustained to the third paragraph of defendant's answer. Said paragraph reads: "For further answer herein, if need be, the defendant shows to the court that at the time of the fire in question the plaintiff, Franz Brass, was the owner or part owner of and was interested in the compress at Athens, Tex., at which the fire is alleged to have occurred, and that previous to that time, on, to wit, about October 1, 1907, the plaintiff, Franz Brass, took out an insurance policy to himself covering all cotton bought by him or by others for his account until August 31, 1908, inclusive, which said policy was issued by the Standard Marine Insurance Company, Limited, of Liverpool, and was numbered 3000. Said insurance policy, among other things, contained the following clause or stipulation: 'It is understood and agreed that on cotton at the Trinity Cotton & Compress Company, Athens, and at the Granger Compress Company, Granger, Texas, or on the platforms or in the yards connected therewith, the assured has released or may release any carrier from any liability under bills of lading. It is also understood and agreed that the right of subrogation as against the St. Louis Southwestern Railway Company of Texas and Texas & New Orleans Railroad and Missouri, Kansas & Texas Railway and the above named compress companies as regards any liability under bills of lading which said railroad companies have or may have outstanding is waived.'" And further alleged that said defendant requested said compress to carry insurance to cover the cotton while upon their platform and in their compress, which insurance was for the benefit of defendant, while such cotton was under bill of lading, and yet in the possession of the compress; that plaintiff had the above stipulations placed in said policy to save expense to himself, he being interested in said compress and to release the railroad from responsibility for damages for loss by fire; that said cotton was in the exclusive possession of said compress for the purpose of compressing; that said clauses were intended by the plaintiff and said insurance company for the protection of the defendant, of which defendant was notified by letter from D. Humphrey & Son, attorneys, which letter purported to be written at the request of plaintiff; further, "defendant alleges that the Trinity Cotton & Compress Company, Athens, referred to in said communication is the same compress at Athens, Tex., at which the fire is alleged to have occurred in plaintiff's petition, and is the same compress in which said plaintiff, Franz Brass, was interested at the time of said fire and at'the time of issuance of said insurance policy referred to, and which said

policy was in force and effect at time of said alleged fire. Wherefore, defendant says that Franz Brass received a valuable consideration for said clauses and stipulations referred to in said insurance policy and agreed therefor to, and did, release said St. Louis Southwestern Railway Company of Texas from all damages flowing from the loss or destruction of any cotton upon the platform or in said compress referred to which was under bill of lading issued by said railway company, and which was under the exclusive care and control of said plaintiff and said compress, and is therefore barred from any recovery in this cause, and this the defendant is ready to verify."

Plaintiff's exceptions are: "Plaintiff further specially excepts to the said answer of the defendant, and to subdivision 3 of said answer, and says that the same is insufficient in law, in that it is not alleged or shown that there was any privity of contract between the insurance company and said railroad company, neither is it alleged nor shown that the said railroad company, the defendant herein, paid or agreed to pay any consideration for the insertion of said clause in said policy of insurance No. 3000, and because the insertion of said clause in any insurance policy taken out by the owner of the cotton could not have the force or effect of relieving the defendant company as a common carrier from the liability which it was under to the plaintiff to properly transport and safely deliver the cotton in controversy. And, further, because it is not shown what interest the said Franz Brass, plaintiff herein, had in the Trinity Cotton & Compress Company, nor any fact or conditions shown which would release or tend to release or relieve the defendant company from its common-law and statutory duty of safely transporting and delivering the cotton delivered to it for transportation, and because the defendant is forbidden to make any contract limiting its liabilities. Plaintiff further specially excepts to said subdivision 3 of the defendant's answer, and says that the same is insufficient in law, in that, if the said insurance policy could otherwise insure to the benefit of the defendant, it could not do so in this case, for the reason that the statutes of this state prohibit a common carrier from contracting against its common-law liability, and what it is prohibited from doing directly could not not be done indirectly by virtue of a contract made between other parties, and because it is not alleged in said answer that the cotton in question was not under bill of lading at the time it was burned, as alleged in defendant's answer." The proposition submitted by appellant is: "A contract relieving a railroad company from liability for the loss of cotton by fire, when the cotton is not in its possession as a common carrier, is valid and binding." The answer of appellant fails to show such privity between the plaintiff, the insurance company, and itself

with reference to the policy issued as authorizes the appellant to receive any benefit from it as against the plaintiff.

In the case of Railway Co. v. Levi, 59 Tex. 674, where the railroad company sought to defeat Levi's claim for loss of cotton by fire on account of a fire insurance policy held by him, the Supreme Court held that the railroad had no interest in the policy, and could not defeat the claim of Levi. Mr. Justice Stayton, speaking for the court, said: "The insurer and the defendant are not joint tort-feasors or joint debtors so as to make the payment or satisfaction by the former operate to the benefit of the latter; nor is there any legal privity between the defendant and the insurer so as to give the former the right to avail itself of a payment by the latter. The policy of insurance is collateral to the remedy against the defendant, and was procured solely by the plaintiff at his expense, and to the procurement of which the defendant was in no way contributory." As far as the appellant is concerned, if it could be considered that it was a party to the contract, it is ineffective as against plaintiff's claim against it, as it was an indirect way to limit its liability as a common carrier as it existed at common law, and therefore contrary to the statutes of this state. There was no error in sustaining the exceptions to said paragraph 3.

There were 25 bales of cotton burned, which were received by appellant at the Athens compress and for which the appellant issued its bills of lading. The court gave a peremptory instruction to the jury to find for plaintiff for these 25 bales. Appellant complains of this instruction, and contends: "Liability of a railway company for loss by fire of cotton on a compress platform adjoining its tracks, which cotton had never been in possession or control of the railway company, can only be established by proof of negligence, which is always a question of fact when there is uncertainty as to the existence of negligence; and this, whether the uncertainty arises from a conflict of evidence, or when the facts are undisputed, fair-minded men will honestly draw different conclusions from them." Section 7 of the regulations of the Texas Railroad Commission reads: "When cotton is tendered to a railroad company upon a compress platform, which is situated on the track of such railroad company, it shall be the duty of the railroad company to take charge of and receipt for such cotton in the same manner and on the same terms as it would receive and receipt for the cotton if tendered at its own depot, platform or other place assigned by it for such transactions; provided, however, that the shipper or the compress company shall in such cases assume the additional risk of insurance involved by such act of the railroad company." The bill of lading issued by the appellant contained a clause as follows:

"Each carrier over whose route cotton is to be carried hereunder shall have the privilege at its own cost of compressing the same in accordance with the rules and regulations promulgated by the Texas Railroad Commission governing the compressing of cotton." The appellant reserving the right to have cotton compressed at its cost, the compress company became its agent, and therefore the cotton being at the compress and the appellant having issued its bill of lading the possession of the compress was the possession of the appellant, and it cannot be said that the possession of the cotton was held by another. In the case of Railway Company v. Edwards, 121 S. W. 570, decided by this court and a writ of error denied by our Supreme Court, where cotton was received by the railroad at a compress and bills of lading not actually issued therefor, fire destroyed the cotton before being compressed, it was held that the cotton had been delivered to the railroad, and its liability attached as a common carrier. On the above authority and the cases therein cited, we hold that there was no error in the charge of the court complained of.

The tenth, eleventh, twelfth, and thirteenth assignments of error embody the same question, and are grouped, and the following proposition is submitted thereunder by appellant: "Where, under the rules and regulations of the Railroad Commission, a shipper exercises an option by directing the railway company to press his cotton in transit, and the railway company has no option but must take the cotton and deliver the same to the first compress in route, and leave it there until it is pressed, such cotton while in the possession of the compress would not be in the possession of the railway company, and the railway company would not be liable for the destruction of such cotton by fire unless it were shown that the fire was a result of its negligence." While the regulations of the Railroad Commission require the railway company to compress cotton in transit, if requested by the shipper thereof, it nowhere requires said cotton to be delivered to the compress designated by the shipper. It is under no obligation by reason of a request to compress at a particular point and by complying it is not relieved of any responsibility thereby. There was a compress at Corsicana, the nearest in route from the three points from which the main bulk of the cotton was received by appellant. Appellant did not deliver it at Corsicana for compressing, as the rules of the commission required, but claims as an excuse for not so doing, which was noted on the bills of lading, "To be compressed at Athens." This did not relieve it of responsibility as a common carrier, although appellee may have been interested in the compress at Athens, as by its contract it reserved the right of having the cotton compressed at its cost. It was not shown that appellee had charge or control of the compress at Athens, and the delivery to the compress for compression must be deemed a part of its duty as a common carrier, and such delivery did not relieve it of its common-law liability.

As we view the case, the appellant is liable for the loss of the cotton, and there was no error in the judgment, and it is affirmed.

Affirmed.