**ABBOTT et al. v. ANDREWS et al.**

No. 3428.

Court of Civil Appeals of Texas. Amarillo.

June 11, 1930.

Rehearing Denied July 2, 1930.

and Cockrell take nothing on their cross-action against defendant J. M. Radford Grocery Company and in favor of the grocery company for the costs incurred in the suit. From this judgment the defendants Abbott and Cockrell have appealed.

The statement of the case as to the substantial facts made on the former appeal to this court renders a detailed statement unnecessary, but reference is made to our former opinion except as to such special matters as will be necessary to be stated in the decision of the questions we will now discuss.

This appeal has been submitted to us on ten propositions of alleged error, and we will discuss such propositions as are controlled by relation to other propositions and thereby attempt to dispose of the appeal upon material issues.

Complaint is made of the attorney for the plaintiff informing the jury how to frame their answers in order to fix liability on the defendants Abbott and Cockrell. In his closing argument, one of the attorneys for the plaintiff said to the jury: "Now, let's come to the special issues right quick. You are instructed in answering the issues in the main charge that the Court has asked you if certain things which constitute negligence, if that was negligence, was that negligence the proximate cause of the injury. If you answer those questions that such acts and such negligence was a proximate cause of the injury, Radford Grocery Co. and the Bus Company, together, will be liable to Poney Andrews." The defendants objected to this statement of the attorney telling the jury the effect of their answers to the special issues, and the court then and there instructed the jury not to consider for any purposes whatever in its deliberation nor to refer to or discuss, if they could possibly forget it, the statement of Mr. Garrard with reference to what the effect of their answers might be. All of the foregoing occurred in open court while said attorney was making a closing argument. The trial court appended to the bill of exceptions the qualification: "That as soon as objection was made and Mr. Garrard saw what had been done, he asked the jury to forget what he had said, in addition to the Court's instruction to the jury not to consider the same."

In support of their exception, the defendants Abbott and Cockrell cite the case of Behringer v. South Plains Coaches, opinion by this court, 4 S.W.(2d) 1003, and the opinion of the Commission of Appeals, 13 S.W.(2d) 334. We do not think that the decision in that case is applicable to the question here under discussion. If we concede that the argument in this case was just as objectionable as that complained of in the Behringer Case, the disposition of the objection in the trial court in

Bean & Klett, of Lubbock, for appellants.

Wilson, Randal & Kilpatrick and Lockhart, Garrard & Brown, all of Lubbock, for appellees.

RANDOLPH, J.

This is the second appeal in this case. For former opinion, see (Tex. Civ. App.) 5 S.W.(2d) 1010. The Supreme Court granted a writ of error from that decision and reversed the judgment of the district court and of this court and remanded the case to the district court for a new trial. 15 S.W.(2d) 218.

The case has been tried again, and, on the verdict of the jury upon issues submitted to them, the trial court rendered a judgment in favor of the plaintiff Andrews against the defendants C. C. Abbott and Herbert Cockrell, jointly and severally, for the sum of $4,000, with interest at the rate of 6 per cent. per annum from date thereof and that the plaintiff Poney Andrews take nothing as against defendant J. M. Radford Grocery Company on his action, and that the defendants Abbott

that case was not calculated to cure or obviate the error. In that case the court overruled the objection and permitted the argument to remain in the minds of the jury, thus giving the court's approval to the argument. In this case the trial court sustained the objection and instructed the jury not to consider same. Not only was this done, but the attorney himself practically withdrew the remarks he had made and asked the jury to forget it.

■ Where an attorney in the heat of a trial advances arguments that are objectionable, we cannot agree that the litigant should be penalized by having his case reversed unless it reasonably appears that some injury was occasioned a substantial right of the defendants. Especially is this true where every effort has been made by the court and the attorney who was guilty of the erroneous argument to withdraw it from the minds and consideration of the jury. Schnick v. Morris (Tex. Civ. App.) 24 S. W. (2d) 493; Oilmen's Reciprocal Ass'n v. Hayes (Tex. Civ. App.) 295 S. W. 675; International & G. N. Railway v. Irvine, 64 Tex. 529; Texas Power & Light Co. v. Central Texas Battery Co. (Tex. Civ. App.) 256 S. W. 644.

We desire to call attention to the fact that the jury did not in any way, as shown by the record, respond to the argument of counsel for plaintiff which is complained of. The statement of the attorney was: "If you answer those questions that such acts and such negligence was the proximate cause of the injury, Radford Grocery Company and the Bus Company together will be liable to Poney Andrews." The jury's finding eliminated the Radford Grocery Company, and hence was not responsive to the argument.

The appellants urge that the trial court committed error in overruling their motion for a new trial upon the ground that the jury, in considering their verdict and before the answers to the special issues submitted to them were written out, discussed the question as to whether or not the defendants Abbott and Cockrell carried insurance.

■■ The defendants Abbott and Cockrell, in their motion for rehearing, set up the fact that the jury were influenced to return a verdict in favor of the plaintiffs as against the defendants Cockrell and Abbott by reason of their discussing and taking into consideration and assuming that the defendants Cockrell and Abbott, one or both, carried public liability insurance. Evidence was heard on this charge, and, in our opinion, the evidence does not sustain them in the matter of the charge. The evidence does not show that the jury ever arrived at any conclusion that the defendants carried such insurance, and the jury is not shown to have assumed any such thing. Two of the jurors only were introduced; the defendant's attorney claiming that the weather was so bad that they could not secure the attendance of the other ten of the jurors. During the taking of the evidence, when the defendants' attorney made the statement about the bad weather and asked to put his reasons in the bill of exceptions, the trial court limited the bill in effect to the one statement not being correct, and said: "This was not a bad snow storm, it did not cover the ground, it was just a sprinkle and there is no reason why a man should not have traveled from Dan to Beersheba." There was no attempt to postpone or continue the hearing to secure the attendance of the other jurors, and therefore the defendants Abbott and Cockrell must be charged with the failure to secure their attendance, and the question is presented upon the testimony of the two jurors.

We give the following statement of the foreman of the jury as to what occurred in the jury room:

"My name is W. C. Grimes. I was the foreman of the jury in the case of Poney Andrews against Radford Grocery Co. A remark was made by some of the boys, while in the jury room and in the presence of the jurors after they had gone to the jury room to consider their verdict, in regard to whether or not the bus line carried insurance and Mr. Rush called my attention to it and I told the boys not to consider that at all, or talk about it in the jury room in discussing that case. R. G. Rush called my attention to it just as they were beginning it and I told them not to consider that at all. I cannot say how many of the jurors mentioned that matter in the jury room, might have been two or three that started the subject and R. G. Rush called my attention to it and I told them not to consider that at all. The best I remember there wasn't but very little said, some one made the remark 'did they carry insurance for damages against cars' and R. G. Rush called my attention to it and I told the boys not to consider that at all and not to talk about it and that is as far as it went. That is the reason I want R. G. Rush, he can testify that he called my attention to it and I told them not to consider it at all or talk about it. I don't believe Mr. Rush said a thing, in the jury room, about whether or not line cars did or did not carry insurance. He called my attention to the fact that it was being discussed. We were talking about the case, different questions, fixing to ballot on some and they elected me foreman and I was taking the situation in and he called my attention to it and he said it should not be discussed and I called the attention to the boys and they dropped it and there was nothing more said. I thought I knew it should not be discussed, but it is not every juror that is a lawyer. There is questions that will come up and after he called my attention to it I knew it should not be discussed. He brought it to my attention for me to rule on it and I told them not to

discuss it at all and it was stopped there and no more said about it. I made that ruling so they could all hear me. I told the boys we should not discuss about the insurance at all in the jury room, that was not in our line. I told the jury that they should, in fixing their verdict, answer the questions and they should not discuss the matter of the line car carrying insurance and if the matter was discussed any more I did not hear it, I am sure it was not. Those remarks and discussions I have testified about occurred after I was elected foreman in the jury room and in the presence and hearing of the other jurors and before the answers to the questions had all been written out, or most had not been. I don't know how far down the line we got. As to whether or not we had answered the question as to amount at the time this matter was mentioned; there was something that the Radford Grocery Company had and those extra questions, some as to the bus line and Poney Andrews and there were extra questions, they were the last.

"When the ballot started, as to the amount of the verdict, it ranged from One-Thousand to Seventy-Five Hundred. We did not add up the amounts and divide it. When we went into the jury room we commenced on the first question and went on down, we began with the first question and answered them on down the line according to the evidence. We balloted on each question as we came to it. As to whether or not we had already decided among ourselves, before we wrote our answers, as to whether or not we would let the Radford Grocery Company out, we just balloted on them as the questions came and, as far as Radford Grocery Co., we took the evidence as we had it and we put more confidence in some of the other evidence. We did not eliminate Radford Grocery Company before we started writing answers; we voted them when we came to them and when we came to the question it was balloted on and naturally, when we finished up, it eliminated Radford, and as far as discussing eliminating Radford, it was not discussed only as we balloted on it.

"There might have been two or three mentioned about the insurance, but R. G. Rush called my attention to it and I told the boys not to discuss it. I did not know whether they had insurance, or not, and I don't suppose the rest of them did. I judge that any business carries insurance, but as far as me knowing it, I didn't know and I did not take that into consideration at all. I don't remember anything having been said about the law requiring bus concerns to carry insurance."

The statement of the other juror was as follows: "My name is Maple Wilson. I was one of the jurors in the cause of Poney Andrews against J. M. Radford Grocery Company. I was present in the jury room when some fellow said 'I wonder if these parties (he was referring to both defendants probably) are carrying insurance' and somebody said 'we cannot discuss that' or 'that don't enter into the case' or made some remark of that kind and it was dropped. I do not remember the names of the two or three parties testified to by Mr. Grimes who mentioned the insurance. We were all sitting around the table and every fellow would say something and it was going back and forth across there. I don't know who mentioned that matter, but I think it was Mr. Grimes that stated we could not discuss that, he was the foreman of the jury. That was before the jurors voted on the amount of the verdict. This verdict came in around three o'clock Thursday and it was real cold that afternoon and night and we had a snow storm practically all day Friday."

While the witnesses speak of the "discussion" of the question of insurance, the actual fact testified to was: The question was asked by some juror, "I wonder if these parties are carrying insurance." The foreman thereupon told them that they could not consider that question, and it was immediately dropped and does not appear to have been further mentioned.

It appears from the evidence of the two jurors that there can be no reasonable doubt that the question of insurance did not have any influence upon the jury's verdict. It is clear that the matter was not "discussed pro and con," that no information or misinformation was furnished the jury, and that there was no unwarranted influence affecting the jury's verdict. We overrule this contention. Stevens v. Dawley (Tex. Civ. App.) 254 S. W. 810, 812, 813; Southern Traction Co. v. Wilson (Tex. Com. App.) 254 S. W. 1104, 1105.

The trial court submitted the case to the jury, in addition to the various definitions of negligence, ordinary care, proximate cause, unavoidable accident, and contributory negligence, upon twenty-eight special issues as contained in the main charge and four special issues requested by the defendants Radford Grocery Company and Abbott and Cockrell. To attempt to consider all of the defendants Abbott's and Cockrell's propositions and assignments, would be to make this opinion too burdensome; hence we have considered and will consider only such assigned errors as appear to us as being material.

The refusal of the trial court to give defendants Abbott's and Cockrell's special issue No. 2, separately presenting a group of facts, asking, (1) Did plaintiff drive his wagon and team on the right-hand side of the street? (2) Could he have driven his wagon and team on the right-hand side of the street? (3) Was it negligence not to do so? and (4) Was such negligence, if any, the proximate cause of the alleged damages and injury? There is no conflict in the testimony that the

plaintiff was driving on the right-hand side of the street.

Article 801, subd. (J) Texas Penal Code, provides: "The person in control of any vehicle moving slowly along upon any public highway shall keep such vehicle as closely as possible to the right hand boundary of the highway, allowing more swiftly moving vehicles *reasonably* free passage to the left." (Italics ours.)

The plaintiff was driving on the right-hand side of the street about six feet from the curb. At this point the street pavement was fifty-five feet wide. The Radford truck drove up on the left of the plaintiff's wagon and was just passing it when the bus drove up, making all three practically abreast at the time the accident occurred. The testimony of the three principals in the case is as follows:

'Poney Andrews testified: 'I was driving about five or six feet from the right hand curb. (S. F. 35) * * * I was about the middle of the block and my right hand wheel was five or six feet west of the curbing, and something hit me on the left hand side. (S. F. 38) * * * I was driving on the right hand side of the street prior to the accident, but I did not take particular notice to see how far I was from the curb, I just guessed I was five or six feet like I usually drove. I am guessing, after it is all over with, that I was about that far from the right hand curb. I didn't measure it, and I didn't look to see after the accident. I could have been a little further from the curb. I could have driven considerably more to the right than I did, I could have hugged the curb, right up against it, I guess. Even if I was six feet from the curb, I still had six feet in which I could have turned to the right. (S. F. 42) * * * I don't know whether that pavement is about fifty-five feet wide or not, I suppose it was wider than that, but I have not measured the paved part of that street.' (S. F. 45)

"P. B. Hooker, the driver of the Radford truck, testified: 'I remember the occasion of the accident to Mr. Poney Andrews. His wagon was about six feet from the curb, that is, the inside wheel was about six feet from the curb, something about the middle of the block coming north, and I was driving the truck north, something like four or five feet from the wagon, about that, to the west of the wagon coming north, and then the bus was coming north, all three coming north. (S. F. 48) * * * and just as I got about even with the wagon the bus was going to come around me and he was driving pretty fast and he cut in a little too quick and hit the hub of my front wheel on the left side and that jerked the steering wheel out of my hand and throwed the truck into the wagon and struck the wagon. (S. F. 49) * * *

Mr. Andrew's wagon was about six feet from the curb, west of the curb, his right hand wheel. I imagine that wagon was about six feet wide, I don't know, and I was about five feet west of the wagon, approximately parallel with the wagon. (S. F. 50) * * * I was never behind the wagon. There was plenty of room and when I turned on 16th Street I never did pull in behind the wagon, but was parallel and about five or six feet west of it. (S. F. 51) I believe the bed of that truck was five and one half feet wide. (S. F. 52) * * * I suppose the plaintiff could have pulled over to the right, there was room enough for that. (S. F. 54) * * * I do not know about how wide this passenger car was that was driven by Mr. Cockrell, but I imagine it was around six feet.'

"Herbert Cockrell, one of the appellants, and the driver of the bus at the time of the collision testified: 'I undertook to pass six or seven feet from the truck and wagon and to the left of them and I then and there decided that there was ample room for me to pass in absolute safety. (S. F. 64) * * * Poney Andrews was near the curb on his side, standing up there driving along with his hand on the standard. There was something like twenty or twenty five feet between his wagon and the center of the street and plenty of room for all of us. There was plenty of room for me and the Radford Grocery Company truck to pass him on that side of the street without getting over the line. (S. F. 68) * * * Poney was driving along there attending to his own business and was on the right hand side of the street. (S. F. 69)' "

It will be seen that there was an open space of several feet between the Radford truck and the plaintiff's wagon and that, as the bus drove up, the driver attempted, while driving. thirty-five miles an hour, to pass in front of the truck, and in doing so struck the Radford truck and threw it against the plaintiff's wagon. This is substantially the finding of the jury. It further appears from the evidence that there was enough room for three vehicles to pass along abreast had it not been for the bus driver attempting to keep in front of the truck. As stated, there can be no question but that there was ample room for the reasonably free passage of vehicles attempting to pass the plaintiff's wagon. The appellants in their brief speak of the street as "congested." So far as we can find from the evidence, there were only four vehicles on this particular part of the street at the time of the accident. We overrule this contention.

The refusal of the court to submit the issue as to whether or not the plaintiff was guilty of negligence in not having a wagon seat was rendered unnecessary by the submission by the court of the issue and the finding of the jury that the act of the plaintiff

in standing in his wagon while driving was not negligence.

We have considered the remaining propositions and assignments, and, finding no reversible error, we affirm the judgment of the trial court.