## SOUTHERN TRAVELERS' ASS'N v. MASTERSON.

### No. 10935.

Court of Civil Appeals of Texas. Dallas. March 12, 1932.

Rehearing Denied April 9, 1932.

J. E. Gilbert, of Dallas, and George Mendell, of Austin, for appellant.

Walter B. Branan, of Dallas, for appellee.

LOONEY, J.

Southern Travelers' Association, a mutual assessment company chartered under the laws of this state, issued to Wm. R. Masterson its certificate or policy of insurance entitling insured to sick benefits resulting from disease described as follows: "We cover all

772

diseases except hernia, orchitis, epididymitis, venereal, insanity, hay fever, asthma, epilepsy, cancer, cataract and diseases of organs and confinement peculiar to women. Everything else covered. * * * For first week of continuous illness $10.00, $25.00 weekly indemnity thereafter, not to exceed 52 weeks." The articles of incorporation of the association, its by-laws, the application for membership, and the certificate of membership, constituted the insurance contract, it being provided that "the payment of the benefit herein provided for is conditioned upon its being collected by this company from assessments and other sources as provided in its by-laws."

On June 19, 1927, Masterson became sick with "flu," on June 23d called in a physician, and thereafter, as the result of the sickness, was confined within doors under the care of his physician until he died, April 29, 1929.

Assured gave immediate notice of his sickness, and on July 1, 1927, defendant furnished blanks for preliminary reports to be made both by himself and physician; and on receipt of these defendant, on July 12, 1927, furnished insured with blanks for final reports by himself and physician when recovery was complete. Masterson, however, did not recover, but lingered and died, and after the expiration of 53 weeks, that being the limit of defendant's liability, insured and his physician having in the meantime made final reports to defendant on blanks furnished for that purpose, insured demanded payment of $1,310 sick benefits, being $10 for the first and $25 per week for the 52 succeeding weeks. On September 28, 1928, defendant rejected the claim on the ground that the membership of insured was in suspense at the time of the commencement of his sickness.

After the death of insured, Mrs. Margaret Masterson, his surviving wife and independent executrix, instituted this suit to recover the sick benefits alleged to have accrued under the policy prior to his death.

Defendant answered by general and special exceptions, general denial, and set up special defenses as follows: That insured failed and refused to make final proof of his claim, as required by the terms of the contract, in that material questions propounded in the blanks furnished by defendant were not answered, which would have disclosed, if truthfully answered, that flu was not the sole cause of insured's sickness and confinement, but at the time of being thus attacked he was and had been for years suffering from a chronic disease called "progressive muscular atrophy"; also that insured failed to pay assessments called for by defendant within the period prescribed in the by-laws of the association, hence his certificate lapsed, and, at the beginning of his sickness, he was not a member of the order.

The case was submitted to a jury on two special issues, without objections or request by either party for additional issues, as follows:

"Special Issue No. 1: Did plaintiff's husband, W. R. Masterson, in furnishing the defendant with the final statement of proof of loss conceal from the defendant any material information as to his illness, sickness or disease? The jury answered 'no.'

"Special Issue No. 2: Was the plaintiff's husband, W. R. Masterson, at the time of the development of his illness complained of, in good standing with the defendant, or had he permitted his policy to lapse? Answer as you find the facts to be. The jury answered: 'We find the plaintiff to be in good standing with the defendant.' "

The court rendered judgment for plaintiff for the full amount sued for with interest, and directed defendant to make an assessment and collect the same for the payment of the judgment as provided both in the by-laws of the order and in chapter 6, title 78, R. S. 1925. Defendant appealed and by appropriate assignments presents for consideration the questions hereafter discussed.

■ Defendant assigned error on the refusal of the court to sustain its general and special exceptions to plaintiff's petition on the ground that no showing was made that proof of the claim sued upon had been furnished defendant, as required by the by-laws of the association; the specific contention being that, where the contract sued upon, as in the instant case, requires the insured to furnish proof of loss, the petition should show compliance with this condition, and, in the absence of such showing, the pleading is subject to general demurrer.

Defendant cites as authority for its contention the decision of the Waco Court, in Mutual Benefit Health & Accident Ass'n v. Shelton (Tex. Civ. App.) 27 S.W.(2d) 845. We do not think this case is in point, for the reason that the policy sued upon in that case was made a part of the petition, a provision of which required insured, in case of claim thereunder, to furnish proof of loss within 90 days from the termination of the period of liability. The court held, in view of this status, that the petition, failing to allege compliance with this provision, was fatally defective. In the instant case, however, no such disclosure is made, the petition simply alleged provisions of the contract relating to the contingency insured against, set up facts showing the accrual of benefits thereunder, alleged demand upon defendant for payment and rejection of the claim. We think the petition alleged a cause of action. In passing upon the exception urged, the court could not assume or judicially know that the contract made any requirement for proofs of loss; besides, the failure to furnish proofs, if re-

quired to do so, was in our opinion purely a' matter of defense. See article 5546 (5714) (3379) R. S. 1925; Francis v. International, etc., Ass'n (Tex. Civ. App.) 260 S. W. 938, 947, writ granted, but affirmed; International, etc., Ass'n v. Griffing (Tex. Civ. App.) 264 S. W. 263, 265, application dismissed for want of jurisdiction.

■ Defendant contends, further, that its general and special exceptions to plaintiff's petition for failure to allege the furnishing of proof of loss having been overruled, such omissions could not be supplied in a supplemental petition. It is doubtful if this proposition is germane to any assignment, but, considering it so, it is not, in our opinion, well taken for the reason that defendant in its answer alleged defensively the by-laws of the order, among others the provision requiring proof of loss to be made within 90 days after the termination of the period of liability charging that, as insured failed to make this proof, no recovery could be had. In a supplemental petition, plaintiff denied these allegations and affirmatively pleaded that proof of loss had been in fact made and furnished defendant. Aside, however, from the allegations of the supplemental petition, an issue was joined on defendant's allegation as to the failure of insured to furnish proof, in that the statute, article 2005 (1829) (1193) (1197) R. S. 1925, provides that: "The plaintiff need not deny any special matter of defense pleaded by the defendant, but the same shall be regarded as denied unless expressly admitted." It follows, we think, that an issue of fact was joined on defendant's allegations setting up this special matter of defense, and that it was not necessary for plaintiff to have replied by supplemental petition.

■ Besides, the by-law requiring that proof of loss for disability, etc., be made "within 90 days after the termination of the period for which the association is liable," is, in our opinion, void, because to comply with the by-law less than 90 days is required, whereas the statute pronounces a stipulation requiring less than 90 days void and unenforceable. See article 5546, R. S. 1925; St. Louis, etc., R. Co. v. Brass (Tex. Civ. App.) 133 S. W. 1075, 1077; Taber v. Western Union Tel. Co., 104 Tex. 272, 137 S. W. 106, 34 L. R. A. (N. S.) 185. It follows, we think, that all assignments based upon the contention that proofs of loss were neither alleged nor furnished by insured must be overruled.

Defendant also insists that a pleading setting up waiver or estoppel should allege facts and not conclusions. This proposition is based upon defendant's assignments Nos. 3, 4, 5, 6, and 7, each complaining of the action of the court in overruling a special exception leveled at certain language contained in plaintiff's pleading quoted in the exception, on the ground that the allegations were but conclusions of the pleader. These assignments are overruled. The language quoted in the fifth assignment alleges the facts which plaintiff insists constituted defendant's waiver of proofs of loss; and, while the language quoted in the third, fourth, sixth, and seventh assignments, unaided by supporting allegations, would subject the pleading to the exceptions urged, but, when considered in connection with other allegations, the quoted language constitutes obvious deductions.

■ The further contention is made that the court erred in refusing to set aside the answer of the jury to special issue No. 1, because insured failed and refused to answer certain questions asked in the blanks for proofs of loss furnished by defendant, and in this way withheld information concerning the chronic ailment from which he was suffering, and that flu was not the sole cause of his protracted illness and confinement indoors.

This contention challenges the sufficiency of the evidence to sustain the finding of the jury. In answer to special issue No. 1, the jury found in effect that insured did not conceal any material information as to his illness, sickness, or disease. Section 2, art. 11, of defendant's by-laws, provides that: "Any untrue statement, misrepresentation, or concealment with reference to any claim under any certificate of membership shall invalidate any such claim." Defendant requested insured to furnish both preliminary and final reports by himself and attending physician on blanks furnished by defendant for that purpose. The pertinent questions asked insured in the preliminary reports, and his answers, are as follows:

"Q. When did physician first attend you? A. June 23, 1927 at two o'clock p. m.

"Q. Where? A. Home * * *.

"Q. Name of disease? A. Flu and anemia.

"Q. Is the above named illness the sole cause of your disability? (Not answered).

"Q. How long since you were afflicted with the same or any similar disease prior to this attack? A. Ten or twelve years. * * *

"Q. Give physician's name? A. Dr. Jas. J. Terrell."

The pertinent answers of Dr. Terrill, in the preliminary report, are these:

"Q. When and where did you first examine him? A. June 23, 1927 at two o'clock p. m. at his home.

"Q. Name of disease causing his disability? A. Flu.

"Q. Has he any other? A. Yes, progressive muscular atrophy.

"Q. State precisely the nature of the illness? A. Secondary anemia following flu. Malaise, nervousness, weakness.

"Q. Give the symptoms that led you to diagnose the case as above? A. See above.

"Q. Is the disease accute? A. No.

"Q. Chronic? A. Yes.

"Q. Venereal? A. No.

"Q. Tuberculous? A. No.

"Q. Traumatic? A. No. * * *

"Q. Have any complications arisen? A. No.

"Q. What treatment have you prescribed? A. Tonic, rest.

"Q. Does the illness necessarily confine him strictly within doors? A. Yes.

"Q. In bed? A. Yes.

"Q. If so, how soon, in your opinion, will he be able to leave the house? A. I do not know.

"Q. When, in your opinion, will he be able to resume his work? A. I do not know. * * *

"Q. Has he in your knowledge or opinion suffered from the same or any similar disease prior to this attack? A. Slight attack ten or thirteen years ago.

"Q. Is the above named illness the sole cause of his disability? A. The two named above.

"Q. Is he improving? A. Yes. * * *

"Q. Has the patient any chronic or constitutional disease or infirmity, or any physical defect or deformity? A. See above."

Final proofs furnished by insured included report by Dr. Terrill July 30, 1928, which, in so far as pertinent, is as follows: Dr. Terrill said:

"I was first called to attend him (insured) on account of his illness on the 23rd day of June, 1927, at his home and after a careful diagnosis pronounced him afflicted mainly with flu.

"Q. Were there any other complications? A. Yes.

"Q. If so, what? A. Progressive muscular atrophy.

"Q. Was the disease acute? A. Yes.

"Q. Chronic? A. No.

"Q. Venereal? A. No.

"Q. Tuberculous? A. No.

"Q. Traumatic? A. No.

"Q. Has he, in your knowledge or opinion, suffered from the same or any similar disease prior to this attack? A. Yes.

"Q. When? A. Slight attack of flu ten or twelve years ago."

Dr. Terrill further stated that insured was under his care and unable to do any work, continuously confined strictly within doors from June 23, 1927, until the date of making the report July 30, 1928; that he visited insured two or three times per week and during that period he was not able to leave the house at all.

"Q. Do you believe that his disability was cause solely by the disease above described? A. By the two. * * *

"Q. To you knowledge or in your opinion, does the patient now have or has he had any chronic or constitutional disease or infirmity or any physical defect or deformity? A. Yes.

"Q. If so, what? A. Progressive muscular atrophy."

Dr. Terrill further testified, that he had known insured since 1919 and had been his regular physician; that he had never treated him or known of his being treated for rheumatism, tuberculosis, paralysis, lumbago, or lame back, siatica, insanity, venereal disease, or any other (except, of course, those mentioned heretofore by him).

The personal report (final) of insured furnished defendant on July 25, 1928, contained the following pertinent questions and answers:

"Q. What was the nature of the illness? A. Flu.

"Q. Was the above named illness the sole cause of your disability. A. (not answered).

"Q. Was the disability in any way the result of an accident? A. No.

"Q. How long since you were afflicted with the same or a similar disease prior to this attack? A. Ten or twelve years.

"Q. Have you had any medical attention in the past five years? A. November 1924.

"Q. Had you fully recovered from same prior to the present illness? A. Yes.

"Q. Had you a physician during your present illness? A. Yes.

"Q. If so, state his name and address in full? A. Dr. James J. Terrill, Medical Arts Building.

"Q. Were you, in consequence of said illness, totally unable to attend to the duties of your occupation? A. Yes.

"Q. Was the period of your disability prolonged by reason of any chronic disease or infirmity? A. (not answered).

"Q. What was the condition of your general health at the time of becoming a member of the association? A. Good.

"Q. Did you have regular and steady employment when taken ill? A. Yes.

"Q. What was your occupation at the time of this illness? A. Insurance and real estate.

"Q. Have you any chronic or constitutional disease or infirmity or any physical defect or deformity, if so what? A. (not answered)."

The failure of insured to answer the questions indicated above furnished the basis for defendant's contention that the finding of the jury to special issue No. 1 was and is contrary to and not supported by evidence, in that insured withheld material information, that is to say, if he had answered the

questions left unanswered, it would have been disclosed that he was then suffering and for years had suffered from a chronic disease known as "progressive muscular atrophy"; hence in failing and refusing to answer the questions was guilty of concealing material facts with reference to his claim, in violation of the by-laws of the order, thus rendering the certificate void.

It is obvious that the unanswered questions propounded to insured called for his opinion in regard to scientific matters, and were not answered by him; his wife (plaintiff) testified, because of a want of knowledge on his part; that he left it to his physician, Dr. Terrill, to furnish the information sought by said questions. In making both the preliminary and final proofs, insured furnished defendant with statements of Dr. Terrill, containing a full and complete disclosure of all facts defendant contends would have been disclosed had insured given answers to the questions left unanswered. Having furnished defendant this information through his physician, we cannot agree that insured was guilty of any concealment in failing to personally answer questions, pertaining to the science of medicine, a layman is not supposed to know.

■ But, aside from the matters just discussed, we are of opinion that the policy obligated defendant to pay sick benefits resulting from "progressive muscular atrophy," the same as it was obligated to pay benefits resulting from flu. The policy reads: "We cover all diseases except" (here follows twelve diseases excepted from the provisions of the policy, but neither flu, progressive muscular atrophy, nor anemia is excepted). After naming the exceptions, the policy proceeds: "Everything else covered."

The evidence disclosed that insured was in good health when he became a member of the order in 1922; that, up to the time of the inception of his fatal illness, he was steadily employed; and that he had been afflicted with progressive muscular atrophy only a few months. Dr. Terrill said that on his first visit to insured, June 23, 1927, he was "afflicted mainly with flu," complicated with progressive muscular atrophy, "the precise nature of his illness being secondary anemia following flu, had fever, malaise, nervousness, weakness." We think it immaterial whether, on June 19, 1927, insured was stricken with flu or with a complication of flu and progressive muscular atrophy, for in either case, under the plain language of the policy, he was entitled to sick benefits.

Language of the Georgia Court of Civil Appeals, in National Life Ins. Co. v. Bean, 15 Ga. App. 661, 84 S. E. 152, 153, is in point at this juncture, the court said: "Seldom does one have a serious physical ailment not complicated by other diseases or physical disturbances; and if proof of a pre-existing disease, or of some concurrent ailment, would prevent recovery for disability caused solely by another disease flowing therefrom and a consequence thereof, for and during the period when the last disease was the sole then existing cause of the disability of the claimant, a policy insuring one against certain specific diseases would be worse than valueless." To the same effect, see, Travelers' Ins. Co. v. Duvall (Ky.) 74 S. W. 740; Kearns v. North American, etc., Co., 150 Minn. 486, 185 S. W. 659, 661. We therefore overrule the contention that the court erred in refusing a new trial on the ground under consideration.

Defendant also contends that plaintiff was not entitled to recover, because insured had been automatically suspended and his certificate or policy rendered ineffective prior to the beginning of his fatal illness. This contention is based upon these facts, that is, on May 1, 1927, the association made a call upon insured for a premium that, under the provisions of the by-laws, should have been paid by 12 o'clock noon on the 30th day thereafter, but, as same was not paid until on June 8, 1927, it is urged that insured was automatically suspended on account of said dereliction and stood suspended at the time he was taken sick on June 19, 1927. Other pertinent facts on this issue will appear later.

The applicable provision of the by-laws of the association reads: "It shall be, and is hereby made the duty of each member of this Association to remit promptly the amount of each premium call or membership fee to the Secretary of the Association at his business office at Dallas, Texas. Such call or membership fee shall be due and payable within thirty days from and after the date which notice thereof bears, and any member who shall fail to remit or to pay any call within thirty days after said notice of call is mailed waives all rights, privileges and benefits to members or beneficiaries under benefit certificates. The mailing of notice to last address of record as given by the member to the Secretary, shall constitute due and legal notice of said call, and any and all notices of such, or reference in any way thereto, whether sent prior or subsequent to the expiration of said thirty days, next following the date which said notice thereof bears, shall in no case be, or be construed as, a waiver of said default in the payment of the call by any member of the Association; or as a retention or reinstatement of said member in or into the membership thereof; and no person shall or may be reinstated as a member thereof, except by the Board of Directors, or a duly constituted committee thereof, on terms to be prescribed by the said Board of Directors."

The record also discloses that subsequent

to the date defendant is now contending that insured's membership lapsed—that is, 12 o'clock noon 30 days after May 1, 1927—additional calls were made by defendant upon insured for premiums, were collected and retained, that is, defendant not only collected and retained the premium a few days after the expiration of the 30 days from May 1, 1927, but with full knowledge of the fact that said premium had not been paid within the 30-day period, on August 2, 1927, levied another assessment upon insured, which was paid by him and retained by defendant. The record further discloses that, during insured's membership, which began in 1922, defendant made twenty-nine calls upon him for premiums, twelve of which were paid after the expiration of the 30-day period, and only eight were paid within said period, but, without exception, these premiums were retained, no forfeiture was declared, and nothing was said or done indicating that defendant would insist upon a literal compliance with the terms of the by-laws. Again, on June 19, 1927, being notified of the illness of insured and recognizing the continuing validity of the contract, defendant furnished insured with necessary blanks and required him to furnish both the preliminary and final reports of himself and attending physician, heretofore mentioned.

■ In view of these undisputed facts, we are of opinion that defendant, not only waived the provisions of its by-laws here invoked to defeat recovery, but is estopped to claim forfeiture.

■ In Supreme Lodge, K. P., v. Hooper (Tex. Civ. App.) 282 S. W. 867, presenting a similiar situation, we held that the association waived strict performance as to the time of paying premiums, and that forfeiture could not under the circumstances be claimed. See this case for full citation of authorities. On the question of estoppel, the doctrine is well established that, where, with knowledge of the ground of forfeiture, the insurer by any negotiations or transactions recognizes the continued validity of the policy, or required the insured by virtue of the contract to take action or incur trouble or expense, estoppel arises preventing forfeiture, and, under such circumstances, forfeiture is waived as a matter of law. Equitable Life Assur. Soc. v. Ellis, 105 Tex. 545, 147 S. W. 1152, 152 S. W. 625; Roberts v. Wichita, etc., Co. (Tex. Com. App.) 221 S. W. 268; Dunken v. Aetna Life Ins. Co. (Tex. Civ. App.) 221 S. W. 691; Georgia Home Ins. Co. v. Moriarty (Tex. Civ. App.) 37 S. W. 628;

Roberts, Willis & Taylor Co. v. Sun Mutual Ins. Co., 19 Tex. Civ. App. 338, 48 S. W. 559; Couch & Gilliland v. Home, etc., Co., 32 Tex. Civ. App. 44, 73 S. W. 1077, 10 C. J. p. 814, § 121, 32 C. J. p. 1346, § 621.

Defendant also contends that the court should have granted its motion for a new trial, because of the alleged misconduct of plaintiff's counsel in telling the jury in the course of his argument that they should answer special issue No. 1 "no." Issue No. 1, as before stated, required the jury to answer whether insured, in furnishing final proofs of loss, concealed from defendant any material information as to his illness, sickness, or disease.

■ We do not think defendant was, or, in the nature of the case, could have been, prejudiced by the suggestion of counsel. The question being easily understood and free from complications, we think the jury understood the effect of answering the issue either by "yes" or "no," and that no harm to defendant could have resulted. Southwestern Telegraph & Telephone Co. v. Sheppard (Tex. Civ. App.) 189 S. W. 799. The court qualified the bill taken by defendant to the remarks of counsel, as follows: "That the court upon the making of above exception by defendant's attorney, instructed the jury not to heed or consider the argument of plaintiff's counsel as to how they should answer said issues, and thereupon plaintiff's counsel also stated that it was not his intention to transgress the rules, and that he withdrew the remark and asked the jury not to consider it." The action of court and counsel, in our opinion, removed any hurtful effect, if in fact any resulted from the argument. Schnick v. Morris (Tex. Civ. App.) 24 S.W.(2d) 491, 498; Abbott v. Andrews (Tex. Civ. App.) 29 S.W. (2d) 885.

We do not think counsel should ever be hampered in arguing the facts, that he should be privileged to draw his own conclusions, and to insist that the jury answer the issues favorable to his contentions, otherwise, an argument will be pointless and inconclusive. In cases submitted, generally, counsel, after arraying the facts, may, with propriety, request the jury to find a verdict for plaintiff or defendant, as the case may be, and we see no reason why less freedom of argument should be enjoyed in arguing cases submitted on special issues. Winnsboro Cotton Oil Co. v. Carson (Tex. Civ. App.) 185 S. W. 1002. Finding no reversible error, the judgment of the lower court is affirmed.

Affirmed.